## THE STATE v. JOHN TATMAN, *Alias* JOHN TRAINOR, Appellant.

### Division Two, March 30, 1915.

1. **MURDER: Sentence at Death: Doubt as to Guilt: Rule on Appeal.** Where the judgment assesses appellant's punishment at death, and the facts show any doubt of his guilt, any infraction of the well established rules of criminal procedure which may be reasonably held to be prejudicial will work a reversal; but if it appear that there is no doubt of guilt and that a ruth-

less murder has been committed, only errors tending to prevent a fair and impartial trial will be considered sufficient to justify an interference with the judgment.

2. ————: **Persistent Reference to Other Crimes.** Unnecessary persistent reference by the prosecuting attorney to other crimes than that for which defendant was on trial, if upon each occurrence defendant's objections to the same were sustained and the officer reprimanded, and if the objections were not sufficiently saved to entitle them to consideration on review, even if they were of a nature calculated to prejudice the rights of appellant, will not work a reversal.

3. ————: **General Objection.** A general objection is no objection. The trial court and the appellate court are entitled to know the grounds upon which an objection to matters occurring during the trial is based. An objection based upon no reason, and having for its purpose only a captious spirit to effect the exclusion of any fact which counsel may regard as damaging to the defense, does not deserve consideration by the court.

4. ————: ————: **Improper Remarks.** Remarks of the prosecuting attorney in reference to defendant's having shot at a witness the same night at another place than that of the shooting charged in the information, and in stating that a certain bulletin described defendant and his co-indictee as "hold-up men," should not be sanctioned, aside from the fact that they weaken the vigor of a prosecution; but if none but a general objection was made thereto, they cannot be reviewed on appeal.

5. ————: **Evidence of Other Crimes.** An exception to the remark of the trial judge, who, upon an offer of evidence of other crimes, stated, "There will be no evidence admitted of other offenses," that it assumed other offenses had been committed by defendant, is too technically trivial for serious consideration.

6. ————: **Evidence That Defendant Was Previously Armed.** Testimony that an hour before the shooting of the policeman for which defendant is being tried, he was seen in another part of the city carrying a pistol, and that he shot at a witness who was not present at the scene of the homicide, is proper in connection with the proven character of defendant and his confederate as "hold-up men," the unexplained possession by them of pistols in violation of law shortly before the shooting, their suspicious conduct and flight upon their discovery by the officer, and their immediately subsequent act in shooting that officer when he attempted to arrest them. It was not error to

admit the testimony, but even if it were error a general objection to it precludes its being held error.

7. ———: **Cross-Examination of Defendant: Why Present in Neighborhood of Crime.** Where defendant has admitted that he knew his co-defendant was a "stick up or hold-up man" and that they were going out into the neighborhood of the scene where they shot a policeman to "look over a drug store," it is not error or improper for the prosecuting attorney to ask him why he was in the neighborhood of the particular drug store where the policeman discovered them the night they shot him.

8. **INSTRUCTIONS: Considered as a Whole.** Instructions should be considered as a whole, and if, when so considered, they present every phase of the case under the evidence, and follow approved established precedents, they will not be held to be erroneous.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*O. F. Wimmer* and *Ben T. Hardin* for appellant.

(1) The conduct of the assistant prosecuting attorney, in his closing argument to the jury, was of the most flagrant and reprehensible type. It was calculated to and did arouse the passions and prejudice of the jury, and inflamed their minds, and it was highly prejudicial and injurious to the rights of this defendant, and constitutes reversible error in this case. State v. Webb, 254 Mo. 428; State v. Wellman, 253 Mo. 316; State v. Baker, 246 Mo. 376; State v. Brown, 247 Mo. 729; State v. Deitz, 235 Mo. 339; State v. Hess, 240 Mo. 159; State v. Spivey, 191 Mo. 112; State v. Schneiders, 168 S. W. 608; State v. Horton, 247 Mo. 666. (2) The court erred in permitting the prosecuting attorney, in his opening statement to the jury, over the objections of the defendant, to refer to the shooting of witness Feltz at Thirtieth and Oak streets an hour before Lynch was shot, and to refer to the bulletin having written memoranda of things which had been taken

from men in this city; and in referring to "this man across the table" and his codefendant as "hold-up men" and stating that the bulletin described them, and that "the bulletin said for him (Lynch) to arrest those men." Same authorities as cited in Point 1. (3) It was reversible error for the court to permit the State, over the objections of the defendant, to give evidence of other crimes alleged to have been committed by defendant and his codefendant, Sherman. That they "gave up" rain coats. And to offer evidence of "a certain open-faced gold watch, bearing the initials 'E. H. S.' on it." Those crimes, if committed by defendant and Sherman, had not the slightest connection with the crime for which defendant was then on trial. State v. Webb, 254 Mo. 435; State v. Wellman, 253 Mo. 314; State v. Duff, 253 Mo. 422; State v. Hyde, 234 Mo. 224. (4) The court erred in admitting evidence given by witness, Feltz, that he saw defendant and Sherman in front of his home at 3220 Oak street, at ten o'clock at night, about an hour before Lynch was shot; that one of them had a pistol. It was shown by Chief Griffin, that Feltz was shot there that night. This was proof of other alleged crimes against this defendant. (5) This judgment should be reversed because of the misconduct of prosecuting attorney, Jacobs, in recalling the witness Feltz in rebuttal, and asking him again if he saw defendant, Tatman and Sherman at Thirtieth and Oak street on the night of April 30th. He had so testified in his first examination, against defendant's objection that he saw them "about ten o'clock" the night Lynch was shot. On objection being sustained to the question, said prosecuting attorney was guilty of most reprehensible and wholly inexcusable conduct, of the most prejudicial type, in violation of defendant's rights, and in violation and absolute disregard of the court's ruling on the last question asked by him immediately previous thereto. He asked witness: "I will ask you whether or not

a shot was fired at you at ten o'clock on the night of
April 30th, in the neighborhood of Thirtieth and Oak
street in this city.'' On objection of defendant's coun-
sel, which he must certainly have known would
promptly be sustained by the court, he beat the court
to it, and before the court could·rule on the question,
he did worse than before: he replied to defendant's
objection, by saying: ''We are going to contradict
the defendant's testimony that this one shot that was
fired out of his pistol was fired at his foot.'' He had
just as well asked Feltz, after he had already asked
him if he saw Tatman and Sherman there at ten
o'clock, he had just as well asked the question: ''I
will ask you whether or not a shot was fired at you
by defendant Tatman, at ten o'clock on the night of
April 30th, in the neighborhood of Thirtieth and Oak,
in this city,'' in the very face of the court's imme-
diately previous ruling that he could not even show
that witness saw Tatman and Sherman in that neigh-
borhood. This conduct on the part of the prosecuting
attorney constitutes reversible error in this case. State
v. Webb, 254 Mo. 434. (6) The court further erred
in allowing the prosecuting attorney, over defendant's
objections, to ask him on cross-examination as to his
knowledge that he was in company with a ''stick-up''
man, and, ''isn't it the truth that when you walked
half way across the street that you were then headed
for the drug store at Ninth and Benton for the purpose
of robbing it?'' Also, ''Had you been car riding to
Thirtieth and Oak that night?'' Also: ''I will ask you
if it is not a fact that the second shot fired out of your
pistol, accounting for the empty shell in your pistol,
was not fired out of your pistol an hour before at Thir-
tieth and Oak streets in this city?'' Defendant in his
examination in chief, had not referred, even in the
most distant or indirect manner, to having been at
Thirtieth and Oak streets; or to any shot having been
fired there, or to any second shot having been fired

out of his pistol. He testified that only one shot was fired out of his pistol that night, and that one was fired by Lynch after he took defendant's pistol from him, and that shot went through defendant's foot. State v. Horton, 247 Mo. 666; State v. Webb, 254 Mo. 434; State v. Kyle, 177 Mo. 663; State v. Hathhorn, 166 Mo. 239; State v. Grant, 144 Mo. 63.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) If an officer suspects from his own knowledge of facts or from facts communicated to him by others, that a felony has been committed and has reasonable ground to believe that the accused is guilty of the felony he may arrest him. State v. Spaugh, 200 Mo. 604; State v. Cushinberry, 157 Mo. 181; State v. Craft, 164 Mo. 653; State v. Albright, 144 Mo. 653; State v. Fuller, 96 Mo. 168; State v. Evans, 161 Mo. 108; State v. Holcomb, 86 Mo. 381; State v. Dierberger, 96 Mo. 672. (2) The statement of appellant that on the night of the homicide he, in company with his codefendant whom he knew to be a "hold-up" man, went to the place of the homicide to look over a drug store situated there, was competent evidence to show his business there armed, and to show the deceased officer had reasonable cause taken in connection with their actions there at that time and information he had of other crimes committed in that neighborhood by persons answering the description of appellant and the authority of the officer to arrest him without a warrant. See authorities cited supra. (3) Where the prosecuting attorney indulges in improper argument and on objection of defendant the court requests the jury to disregard the statements and admonishes the prosecuting attorney to keep within the record, the defendant if not satisfied should ask the court to take further action and failing so to do acquiesces in the action of the court. State v. Wana,

245 Mo. 563; State v. Raftery, 252 Mo. 83.   (4) Improper remarks made by the prosecuting attorney in either his opening statement or argument to the jury are not reviewable on appeal unless objected to at the time.   State v. Gartrell, 171 Mo. 512; State v. Grace, 230 Mo. 307; State v. Phillips, 233 Mo. 307.   (5) Where the prosecuting attorney is rebuked by the court for improper remarks, that .will ordinarily be sufficient. State v. Duelly, 245 Mo. 188; State v. Ferrell, 246 Mo. 333; State v. Kullman, 225 Mo. 632.   (6) A defendant on the witness stand may be cross-examined in detail as to any matter referred to in his examination in chief and may be contradicted and impeached as any other witness in the case.   Sec. 5242, R. S. 1909; State v. Larkin, 250 Mo. 234; State v. Miller, 156 Mo. 85; State v. Sharp, 233 Mo. 284; State v. Barrington, 198 Mo. 71; State v. Feeley, 194 Mo. 315; State v. Kyle, 177 Mo. 663; State v. Fisher, 162 Mo. 172; State v. Cunningham, 154 Mo. 174; State v. McLaughlin, 149 Mo. 29; State v. Punshon, 133 Mo. 54; State v. Eisenhour, 132 Mo. 148; State v. Harvey, 131 Mo. 345; State v. Kennade, 121 Mo. 413; State v. Avery, 113 Mo. 498; State v .McKenzie, 102 Mo. 632; State v. West, 95 Mo. 142; State v. Brannum, 95 Mo. 22; State v. Berning, 91 Mo. 85; State v. Taylor, 134 Mo. 156; State v. Miller, 190 Mo. 462; State v. Keener, 225 Mo. 499; State v. Donnington, 245 Mo. 354.   (7) It was competent for the prosecuting attorney in his opening statement to refer to and also to introduce in evidence the police bulletin issued to officers concerning crimes committed and descriptions of the perpetrators describing appellant and his confederate to show that the officer had reasonable cause to arrest them.   State v. Spaugh, 200 Mo. 605. (8) When the prosecuting attorney makes improper remarks to the jury in his argument and withdraws them and again repeats them and again withdraws them the Supreme Court, if convinced of appellant's guilt, will affirm the judgment.   State v. Baker, 246

Mo. 376.   (9) Evidence of other crimes committed by one on trial for homicide is admissible for the purpose of showing that the officer had reasonable grounds for attempting to make the arrest and for the purpose of showing a motive for the homicide.   State v. Grant, 79 Mo. 136; State v. Rudolph, 187 Mo. 84; State v. Collins, 181 Mo. 259; White v. State, 70 Miss. 255; People v. Wilson, 141 N. Y. 188; English v. State, 34 Tex. Crim. 198; State v. Morgan, 22 Utah, 172; State v. Shaw, 73 Vt. 154; Dryer v. State, 139 Ala. 117; People v. Coughlin, 13 Utah, 58; Williams v. Com., 85 Va. 613; Com. v. Major, 198 Pa. 200; People v. Pool, 27 Cal. 573; Anderson v. State, 133 Wis. 601; State v. Byrd, 72 S. C. 104; People v. Woods, 147 Cal. 265; Bishop v. Com., 109 Ky. 565.

WALKER, J.—The prosecuting attorney of Jackson county filed an information charging appellant and one Samuel Sherman with murder in the first degree in that they shot and killed one John Lynch, April 30, 1913. A severance was granted, and appellant was tried, resulting in his conviction for murder in the first degree, his punishment being fixed at death.   From this judgment he appealed to this court.

At about 11:30 o'clock p. m., April 30, 1913, John Lynch, a police officer of Kansas City, in full uniform, went into a drug store on the corner of Ninth street and Benton boulevard in Kansas City for a drink of water. Mr. Alexander, the druggist, gave him the water and he sat down on a stool opposite the soda fountain near the window facing the street to drink it.   While the officer was thus occupied appellant and his codefendant came across Benton boulevard from its east side to the middle of same and stopped in front of the drugstore.   From this point a clear view could be had of the interior of the store.   When appellant and his codefendant stopped in the middle of the street they were within the view of the officer and the druggist, and the

former, upon seeing them, said: "I believe those are the men I am looking for," and started after them. The two men in the meantime, evidently having seen the officer in the drug store, ran rapidly to the corner of Ninth and Benton streets, and then went west on Ninth street. About 125 feet from the drug store they stopped as the officer hallooed to them, saying, "Wait a minute boys, I want to see you." Alexander, the druggist, who had followed the officer to the door, was a witness to what occurred. When the officer arrived at the point where the two men were standing he reached around under appellant's coat and took from his hip pocket a revolver. As he did this the shorter of the two men, Sherman, stepped back, drew a pistol and fired at the officer. Several shots then followed in rapid succession. Immediately after the first shot, the druggist ran back to the money drawer, took the cash therefrom, got a pistol and returned to the door. Looking down Ninth street he saw no one but the officer staggering about in a dazed way, his arms hanging limp by his sides. In a few minutes the officer returned to the drug store with a pistol in one of his hands, which he laid on the counter, saying, "Doc, call the wagon, they have shot me." The pistol he laid on the counter proved afterwards to be the one he took from the appellant, and it had only one empty chamber. The officer rapidly became very weak and blood gushed from his mouth and nostrils, covering the floor and furniture near where he fell. The druggist only saw one shot fired, but estimates that he heard seven or eight additional shots.

A Mr. Kauffman, proprietor of a drug store in the same block as Alexander's, was sitting in his store when he heard the first shot. He ran to his front door, and as he did so another shot was fired. Reaching the front door he looked east on Ninth street and saw three men, one of them being police officer Lynch. The taller man, appellant, stood near the curb, while the officer

stood or staggered about a short distance away. The druggist took in the situation and ran back to get his pistol. When he returned to the door appellant was nearer the terrace, his codefendant was crouching behind a trolley pole or tree and the officer was in about the same position as when the druggist first saw him, and as he staggered about his arms hung limp by his sides. Appellant was firing at the officer as rapidly as the pistol could be discharged, with now and then a shot from his codefendant. As they shot, some one repeatedly. hallooed, "Hold up your hands, hold up your hands." About one and a half minutes elapsed while this was happening, when appellant and his codefendant ceased shooting and ran rapidly west on Ninth street. As they passed by witness's drug store he fired three shots at them.

A domestic in the employ of a family living near the scene had just returned home when she heard the first shot. She was standing near a window affording a view of Ninth street. She raised the window, and, looking out, saw appellant, Sherman and the officer in the street near a gas light about fifty feet away. Appellant was standing two or three feet from Sherman, his codefendant, and both were rapidly shooting at the officer, who was doing nothing in the way of shooting. Appellant's firing was more rapid and frequent than that of Sherman. When the shooting ceased, the two men ran west on Ninth street, and the officer, groaning as he staggered along, made his way back to Alexander's drug store.

While this was occurring a police sergeant named Whalen, on duty on a near-by street, heard the shooting and ran in that direction, when he saw the two men running north from Ninth street along Bellefontaine. Whalen ran after them, and, covering them with his pistol, commanded them to stop and throw up their hands, which they did. Sherman had a pistol in his right hand, and was supporting the appellant, who

had been shot in the foot, with his left. They surrendered their pistols to the officer. The one surrendered by appellant was shown to belong to officer Lynch, whom they had shot, and appellant, in a statement made at police headquarters, stated that as Lynch took appellant's pistol he (appellant) wrenched Lynch's pistol from him, thus accounting for its possession. Whalen took appellant and Sherman to police headquarters. There were three empty chambers in Sherman's pistol and no loads in Lynch's pistol, which had been taken from appellant. The latter's statement was to this effect:

"I was born in Belleville, Kansas, in 1888. Last night, April 30, about 9:30 or ten o'clock, I met Sam Sherman at Ninth and Walnut. We walked up to the post office, got on the car and rode to three blocks east of Benton boulevard. Sherman told me he was going out there to look a place over and asked me to come along with him. The place he wanted to look over was the drug store at Ninth and Benton. I knew that Sherman was a 'stick-up,' as I learned that about three weeks ago when I first came back from St. Louis. We were walking up the sidewalk and this officer came up the walk behind us and said, 'Wait a minute, boys, I want to see you.' He came up to us and said something else, and at the same time run his hand around under my coat and got my gun out of my hip pocket. Then was when Sherman started to shoot and the officer staggered over to the curbing. He had his gun in his hand and my gun. I didn't know whether he was going to take a shot at me or not and I grabbed his gun and he just let go of it without struggling and then he fired one shot with the gun he took off of me and that was the shot that hit me in the foot. Then we ran, Sherman helping me, until we were arrested by Sergeant Whalen. I stopped at the Fox Hotel night before last and gave my name to the man as Jack Trainor.

"We both had guns. I don't know where Sherman has been stopping, but I think it is somewhere in the East Bottoms.

"JOHN TATMAN.

"Subscribed and sworn to," etc.

The life of the appellant stands forfeit for the satisfaction of the judgment. While we have heretofore set forth a formal statement of the facts as shown by the testimony, something more is necessary, in justice to the appellant and, if it so appears, in justification of the rulings of the trial court. If it be shown that there is any doubt of appellant's guilt, then any infraction of the well-established rules of criminal procedure which may reasonably be held to be prejudicial· may well work a reversal; but if it appears that there is no doubt of guilt and that a ruthless murder has been committed by the appellant, then only errors tending to prevent a fair and impartial trial under the forms of the law should be considered of sufficient magnitude to justify an interference with the judgment. In this view of the case, which comports with a wholesome enforcement of the criminal law, we deem it necessary to set forth with more than ordinary particularity the facts immediately pertaining to the killing, although it involves some repetition and a certain degree of prolixity.

It was developed by the testimony that officer Lynch was looking for two men suiting the descriptions of appellant and his codefendant, as such descriptions were found in one of the officer's pockets after he was taken to the hospital. A resume of the testimony of several witnesses shows that when the officer reached the two men who had stopped when he called to them and was taking appellant's pistol from him, the latter wrenched the officer's pistol from him and, as before detailed, began to fire rapidly at the officer. The latter was found to have been shot five times. Once through the face; once just below the navel, the

shot entering the abdominal cavity and penetrating the intestines; once just below the ribs on the right side, the ball passing entirely through the body; once through the back of the neck; and once in the back, just below the shoulder blades. The officer lived four or five days after receiving these wounds, when he died from the effects of same.

Various facts in evidence, when considered together, lead to the conclusion that the one empty chamber in appellant's pistol, which had been taken from him by the officer, was the result of its having been fired by appellant earlier in the evening at a different place than where the difficulty occurred. There was no evidence other than the statements of appellant and his codefendant that the officer fired a single shot. Disinterested eyewitness near at hand after the first shot, which it is shown was fired by Sherman, say that the officer staggered about with his arms hanging helplessly by his side while appellant and his codefendant fired rapidly at him. Appellant says he never intentionally shot the officer; that two shots were accidentally fired from the officer's pistol while appellant was struggling with him for its possession. This statement is flatly contradicted by the physical fact that all of the loads in the officer's pistol, when taken from appellant's possession, had been discharged, none of them by the officer, and the testimony of persons who witnessed the shooting after the first shot was fired, and who, as we have before stated, testified that appellant and his codefendant, after this shot, stood aloof and repeatedly fired at the officer.

In the face of these facts, while we will with painstaking care review the assignments of error, our main purpose will be to ascertain whether the appellant had a fair trial. If so, our duty is plain.

264Mo24

I. *Conduct of Attorneys for the State.*—Appellant contends that the conduct of the assistant prosecuting attorney in persistently referring to other crimes than that for which appellant was on trial was prejudicial error. The record discloses that, notwithstanding the seemingly unnecessary persistence of the assistant prosecuting attorney in this respect, upon each occurrence appellant's objections to same were sustained and the officer reprimanded; besides, the objections made thereto by counsel for the appellant were not sufficiently saved to entitle them to consideration on review, if they had been of a nature calculated to prejudice the rights of appellant.

A like contention is made in regard to certain alleged remarks of the prosecuting attorney in reference to appellant's having shot at a witness name Feltz the same night at another place than the scene of the shooting charged in the information, and in stating that a certain bulletin referred to described the "men across the table," meaning appellant and his codefendant, as "hold-up men." Such conduct on the part of a public prosecutor charged with the dignified enforcement of the criminal law should not be sanctioned. It lessens the vigor and effect of a prosecution and oftentimes necessitates reversals. In this instance, however, no such objection was made as to entitle the error complained of to a review. We have repeatedly held that a general objection is no objection. [Springfield v. Owen, 262 Mo. 92; State v. Fields, 262 Mo. 158; Williams v. Williams, 259 Mo. l. c. 250.] Not only this tribunal, but the trial court, is entitled to know the grounds upon which an objection to matters occurring during the trial is based. [State v. Phillips, 233 Mo. l. c. 307.] An objection based upon a substantial reason is easily stated. If based upon no reason, and having for its purpose only a captious spirit to effect the exclusion of any fact which counsel may regard as

damaging to the defense, it does not merit consideration.

II. *Evidence of Other Crimes.*—Appellant's contention in regard to the improper admission of evidence of other crimes is unfounded. The record shows that upon this offer being made, as well as subsequent ones, the trial court said, ''There will be no evidence admitted of other offenses,'' thus sustaining appellant's objection. To this ruling, however, counsel for appellant excepted on the ground that it assumed that other offenses had been committed by appellant and was consequently prejudicial. Without intending to exhibit impatience, we deem this contention too technically trivial for further remark.

III. *Evidence of Appellant's Being Armed Before the Shooting.*—Testimony was offered by the State that an hour before the commission of the crime appellant was seen in another part of the city carrying a pistol and that he shot at the witness who testified to this fact. This testimony was objected to generally. This precludes our considering it if error, but under the facts in this case it cannot be so classified. The proven character of the appellant and his codefendant as ''hold-up men,'' the unexplained possession of firearms in violation of law shortly before the shooting, and the suspicious conduct and flight of the parties from the drug store upon their discovery of the officer, and their subsequent acts, were sufficient to render the fact in question admissible as a circumstance tending to throw light on the homicide. It was not error, therefore, to admit the testimony, even if proper objection had been made thereto. [Wharton on Homicide (3 Ed.), p. 895; State v. Hyde, 234 Mo. l. c. 226; 2 Wharton on Criminal Evidence (10 Ed.), pp. 1680 and 1681.]

IV. *Cross-examination of Appellant.*—The prosecuting attorney was authorized in asking the appellant on cross-examination, in view of his direct testimony and of all the other facts, why he was in the neighborhood of Alexander's drug store the night of the crime. He had admitted that he knew his codefendant was a "stick-up or hold-up man," by which we understand he was a type of highwayman, and that they were going out into the neighborhood to "look over a drug store." Their status as questionable characters being thus admitted by appellant, evidence of their purpose in the locality where they committed the crime, was proper, as tending to show a motive for its commission. If appellant's presence at 11:30 o'clock at night near the location where the shooting occurred was lawful, it could and would have been explained by him as a fact tending to strengthen whatever defense he might have made, and no complaint would have been made by his counsel concerning the inquiry. If, therefore, the question is permissible to elicit information from an accused testifying in his own behalf as to the reason of his presence at a certain place shortly before the commission of the crime with which he stands charged, for the purpose of showing a lawful purpose, then the converse is true, and when the defendant goes upon the stand and testifies as to his presence at a certain point and does not explain same he may be asked on cross-examination his reasons for being there. [State v. English, 67 Mo. 136; State v. Onstott, 170 S. W. (Tex. Cr. App.) 301; State v. Banks, 73 Mo. 592.]

The rule thus announced does not violate that portion of section 5242, Revised Statutes 1909, which provides that a defendant "shall be liable to cross-examination, as to any matter referred to in his examination in chief," because, as stated, he had testified generally as to his having gone into the locality of Alexander's drug store just previous to the commission of

the crime, and his participation in same and apprehension while fleeing from the scene are physical facts in corroboration of his statement. No substantial ground of error can, therefore, be based on the inquiry complained of, and appellant's contention is overruled.

V. *Instructions.*—Appellant complains that eight of the instructions given contain prejudicial error. We have carefully analyzed each one of which complaint is made, and find in every instance that it follows well-established precedents and is not subject to valid objections. It would profit nothing to set the instructions forth at length, and we have not done so. Taken upon the whole, and it is in this manner that they should be considered, the instructions presented every phase of the case under the evidence. Appellant has on this score no substantial ground of complaint.

We feel impelled to say that the manner in which this trial was conducted by counsel for the State is not to be commended, but in view of the prompt rulings of the court in excluding what would otherwise have been error and the failure of counsel for appellant in many instances to save proper exceptions, the defendant, in the face of the unquestioned fact of his guilt, was either not prejudiced or the errors complained of are not subject to review.

The facts being conclusive, and a fair trial having been awarded, an affirmance of the judgment must follow, and the sentence imposed by the trial court ordered to be executed, and it is so ordered. All concur.