## THE STATE v. ROY TIPTON, Appellant.

Division Two, April 9, 1925.

1. **INFORMATION: Challenged by Motion in Arrest.** The sufficiency of the information to state facts constituting an offense having been challenged by the motion in arrest, its sufficiency is sustained, although its validity is not challenged in the brief.

2. **———: Burglary and Larceny.** Under the statute (Sec. 3305, R. S. 1919) an information may charge in the same count both burglary and larceny; and an information which contains all the necessary averments to charge burglary in the second degree (Laws 1921, p. 196) and which charges in the same count that defendant committed the crime of grand larceny (under the provisions of Sec. 3312, R. S. 1919) by feloniously stealing and taking away from said building merchandise of an aggregate value of thirty dollars, is sufficient to support a verdict finding defendant guilty of grand larceny alone.

3. **HEARSAY: No Objection: Motion to Strike Out.** The admission of hearsay testimony is not error unless a specific objection is made, at the time it is offered, that it is hearsay; an objection that it is incompetent is not sufficient. And if no objection that it is hearsay is made at the time it is offered and admitted, it is not error to overrule a subsequent motion to strike it out.

4. **HARMLESS HEARSAY.** Even if timely and proper objection was made to certain testimony on the ground that it was hearsay, its admission is not reversible error if it did not injure appellant. The testimony of an officer that the police inspector called him by telephone and requested him to go to the scene of an alleged crime and investigate the facts; that the inspector, in this conversation, gave to him the license number of the automobile belonging to defendant's brother, and that he thereupon arrested defendant and his brother, could not have injured defendant; and in considering its significance the court will accept as true appellant's statement that there was no evidence that his brother or his automobile was seen in the neighborhood where the offense was committed or that he was with his brother when it was committed—said statement demonstrating that the testimony complained of as being hearsay enured to the benefit of appellant.

5. **INSTRUCTION: Grand Larceny: Necessary Elements: Omission of Word Feloniously.** It is not necessary that the instruction setting forth the elements of grand larceny specially use the word

State v. Tipton.

"feloniously" as descriptive of the intent. It is proper to incorporate it in the information for the purpose of classifying the offense, but it is not necessary to incorporate it in the instruction; the intent may be defined by other words indicating the wrongful and fraudulent or criminal nature of the taking. An instruction telling the jury that if they find from the evidence that defendant "did wrongfully take and carry away" certain goods of the value of thirty dollars or more, "with the intent to fraudulently convert the same to his own use and permanently deprive the owner thereof without his consent," etc., sufficiently defines the offense, without a specific use of the word "feloniously."

6. **CONFESSED ERROR:** Affirmance. Notwithstanding a confession of error by the State, the judgment of conviction will not be reversed where the matters thus admitted to have been error were not such in fact.

Citations to Headnotes: 1, Criminal Law, 16 C. J. 2769; 2, Burglary, 9 C. J. 101; Larceny, 36 C. J. 264; 3, Criminal Law, 17 C. J. 3335; Trial, 38 Cyc. 1406; 4 and 6, Criminal Law, 17 C. J. 3675, 3741; 5, Larceny, 36 C. J. 547.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Harvey & Baer* for appellant.

(1) The court erred in admitting in evidence testimony of Lieutenant Murphy that Inspector Vasey told him to investigate the offense in question, at the same time communicating to Murphy the license number of an automobile; and further erred in permitting Murphy to testify that upon getting the information of the license number from Vasey he (Murphy) recognized it as a license number on an automobile of appellant's brother, and thereupon immediately ordered the arrest of appellant and his brother for the offense of which appellant was convicted. Vasey did not testify in the case, and there was not a syllable of evidence in the case that an automobile was used in committing the offense in question, not a particle of evidence that the brother of appellant or his automobile were seen in the neighborhood

where the offense was committed, not a shred of evidence that appellant was with his brother when the offense was committed (or at any other time), or that appellant ever had or used or was ever seen in his brother's automobile. State v. Grote, 109 Mo. 348; State v. Butler, 113 Me. 1; State v. Niesbbalski, 82 N. J. L. 177; Kirby v. State, 44 Fla. 81; Johnson v. State, 250 S. W. 681. (2) The instruction of the court defining larceny is erroneous. Sec. 3312, R. S. 1919; Hix v. People, 157 Ill. 382; State v. Casteel, 53 Mo. 124; State v. Sparks, 177 S. W. 346; State v. Richmond, 228 Mo. 362; State v. Weatherman, 202 Mo. 7; State v. Rader, 262 Mo. 117; State v. Hayes, 262 S. W. 1034.

*Jesse W. Barrett,* Attorney-General, and *W. L. Vandeventer,* Special Assistant Attorney-General, for respondent.

Appellant in his brief presents the question of error in the giving of subdivision 3 of instruction numbered 1. In view of the expression of the court regarding an instruction of the same import given in the cases of State v. Rader, 262 Mo. 117; State v. Sparks, 177 S. W. 346; and State v. Madison, 177 S. W. 347, 349, we concede that appellant's position is well taken.

RAILEY, C.—On April 18, 1923, appellant, Roy Tipton, was charged in a verified information, filed in the Circuit Court of the City of St. Louis, Missouri, with the crime of burglary in the second degree and grand larceny, in a single count. Said information, without caption and verification, reads as follows:

"Roy A. Fish, Assistant Circuit Attorney, in and for the city of St. Louis aforesaid, within and for the body of the city of St. Louis, on behalf of the State of Missouri, upon his official oath, information makes as follows: That Roy Tipton on the 4th day of March in the year of our Lord one thousand nine hundred and twenty-three at the city of St. Louis aforesaid into a certain store, shop and building of Witte Hardware Company, a

corporation there situate and being, feloniously and burglariously, forcibly did break and enter, with felonious intent then and there, thereby feloniously and burglariously to steal, take and carry away certain goods, wares, merchandise, other valuable things, and personal property in the said store, shop and building, then and there kept and deposited, and in the said store, shop and building ninety-five revolvers of the value of $1,765.88; thirty-two automatic pistols of the value of $506.32; fourteen shotguns of the value of $702.87; six rifles of the value of $35.08; one target pistol of the value of $7.81; four maxim silencers of the value of $16.80; eighteen baseballs of the value of $24; nine baseball gloves of the value of $22.21; all of the value of $3,070.97; of the goods, wares, merchandise, other valuable things and personal property of the said Witte Hardware Company, a corporation in the said store, shop and building then and there being found, then and there feloniously and burglariously did steal, take and carry away, with the felonious intent then and there to permanently deprive the owner of the use thereof and to convert the same to his own use; against the peace and dignity of the State.''

Defendant was arraigned and entered a plea of not guilty. He was tried before a jury and on November 14, 1923, the following verdict was returned:

''We, the jury in the above entitled cause, find the defendant guilty of grand larceny and assess the punishment at imprisonment in the penitentiary for two years.''

After the return of said verdict on November 14, 1923, appellant filed his motion for a new trial, and on the 16th of said month filed a supplemental motion for a new trial. Both of said motions were overruled on November 26, 1923. On November 30, 1923, defendant filed a motion in arrest of judgment, which was overruled. Thereafter, on the same day, judgment was rendered, sentence pronounced upon him, in conformity to the term of the verdict aforesaid, and he was granted an appeal to this court.

The testimony, as stated by counsel for respondent in their brief, is substantially correct and reads as follows:

The evidence on the part of the State tended to prove the following facts:

On the 4th day of March, 1923, the Witte Hardware Company had its place of business at 704 and 706 N. Third Street, between Lucas and Morgan, fronting west, and extending back toward the east to an alley running north and south, in the city of St. Louis, Missouri. The Witte store building adjoined the Zelle Brothers Commission Company on the south and the Stratmann Commission Company on the north, with no natural connection between any of the three buildings, partition walls separating said buildings. The first floor of the building occupied by the Witte Hardware Company was practically on a level with Third Street and thereunder, and under the street level a basement extended back toward the alley.

On Saturday, March 3d, at about two-forty-five P. M., after securely locking all the doors of the Witte Hardware Company building, Mr. Albert T. Caltwasser, the business manager, left the premises. He next visited the place on the following day, Sunday, at about eleven o'clock A. M., for the purpose of admitting a representative of the Missouri District Telegraph Company to do some repair work. When he left the building at about eleven-thirty A. M., all the doors and windows were securely locked. He was again called back at about six-thirty P. M., of the same day, and upon arriving at the premises found a number of police officers. On further inspection he found a hole in the north wall of the Witte Hardware Building at a distance of about fifty feet east of the building line, about thirty inches in diameter, being a hole large enough to admit the body of a man. This hole led into the adjoining building, occupied by the Stratmann Company, which building had been broken into in order to get access into the Witte Hardware Company building.

There was taken from said stock of goods in the Witte Hardware Company building; ninety-five revolvers, rifles, shot guns, hunting knives, flashlights, and flashlight batteries, all of the value of $431.08. Immediately next to the hole drilled through the wall between the Stratmann Commission building and the Witte Hardware Company building, in the Stratmann building basement, were found a number of large empty sacks bearing the label of a certain seed house on Fourth Street in the city of St. Louis. Outside the hole which had been drilled in the wall of the Stratmann Commission building were found a number of sacks, bearing the same label, filled with goods taken from the Witte Hardware Company. These sacks of goods were removed to the Fourth Street police station.

On the 4th day of March, at about five o'clock in the afternoon, Officer Henry William Kohne of the Fourth Street district police station was walking along on Third Street toward Washington Avenue, trying certain doors of buildings and found at 712 N. Third Street that the door leading into the Missouri Commission Company was open. The officer walked toward the back of this building and saw two men who were feeding chickens in the place. The officer continued walking south on Third Street and continued trying doors. When he reached the Witte Hardware Company building he opened the vestibule and went in and tried the door and looked into the office and noticed a man in the office on the south side of the building. As he tried the door the man looked toward the door. He looked at the officer and the officer looked at him and the man walked straight toward the entrance where the officer was standing. He wore a blue suit with a wide stripe, no hat. When he got within fifty feet of the officer he went over toward the wall and it looked as if he had fallen down. The officer did not know where he had gone. The officer then left the vestibule and told Mr. Kratz, who was walking with him, to call up Olive 5000 and advise that number that the officer needed help. He then ran down toward Lucas Avenue. The defendant was the man whom the

officer had seen in the building on the Sunday afternoon mentioned. A few minutes after the call for help was sent in several officers appeared. Shortly thereafter Lieutenant Vasey appeared. The officers then entered the building and found that a hole had been cut in the wall on the north side of the building just large enough to admit a man. The hole led from the Stratmann building into the basement of the Witte Hardware building. The door in the back of the Stratmann building had been jimmied open. On the 5th day of March, Officer Kohne saw the defendant at police headquarters. On the 4th day of March, about five-fifty P. M., Officer Murphy was called and instructed to go to the Witte Hardware Company at Third and Washington Avenue in the city of St. Louis, that the Witte Hardware Company was being burglarized; he responded to the call and searched the place, but found no one in the building. Inspector Vasey, who was present, gave Murphy an automobile-license tag, and from the license number Murphy recognized the automobile to be the automobile of Herman Tipton. He immediately called the police station, and was issued orders to arrest Herman Tipton, his brother, Roy Tipton, and several other men. On March 5th, Officer Murphy was at police headquarters, and in the presence of Officers Whalen and Mollering had a conversation with defendant. Officer Joseph G. Whalen arrested the defendant, Roy Tipton, on the 5th of March, at Twelfth and Clark Streets.

The evidence on behalf of the defendant tended to show that Alexander Kelley of 1017 Russell Avenue, St. Louis, was a very good friend of the defendant, having been a schoolmate; that he met the defendant at about a quarter of four P. M., on Sunday, March 4th, at Twelfth and Chouteau; that they remained standing at this corner for some few minutes, and then attended the Merry Widow show which is located at Dillon and Chouteau Avenue, in St. Louis, which is about three blocks distant from Twelfth and Chouteau, occupying seats in the last row of said show house. After ten or fifteen min-

utes they were joined by another friend, Oliver Harrison. The three remained at the show until about six-fifteen P. M. After leaving the show the three went over to Dillon Street, to Hickory, down Hickory, where they left Harrison at his home. The defendant and Kelley proceeded down Hickory Street, the defendant leaving Kelley at his home at Ninth Street, and Kelley then proceeded on to his home.

Such other matters as may be deemed necessary, will be considered in the opinion.

I. While counsel for appellant in their brief have not attacked the validity of the information, yet its sufficiency is challenged by the motion in arrest of judgment which recites that: "The information fails to state facts sufficient to constitute any offense under the laws of the State of Missouri."

*Information.*

Aside from the caption and verification, the information is heretofore set out in full and speaks for itself. Section 3297, Revised Statutes 1919, as amended by Laws 1921, page 196, relating to burglary in the second degree, reads as follows:

"Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this State to be burglary in the first degree, or any booth or tent, or any boat or vessel, or railroad car in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

Section 3312, Revised Statutes 1919, relating to grand larceny provides that:

"Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, rights in action, or other personal property, or valuable thing whatsoever of the value of thirty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule, hog or

neat cattle belonging to another, shall be deemed guilty of grand larceny; and dogs shall for all the purpose of this chapter be considered personal property.''

The information, in a single count, charges defendant with burglary in the second degree and with grand larceny. It contains all the necessary averments under the Law of 1921 to charge defendant with burglary in the second degree, in entering said building to commit the crime of larceny. It likewise charges, in appropriate language under the provisions of Section 3312, Revised Statutes 1919, that defendant committed the crime of grand larceny by feloniously stealing and taking away from said building goods, wares, and merchandise described in the information, of the aggregate value of $3,070.97, etc.

Section 3305, Revised Statutes 1919, provides, that an information may charge in a single count both burglary and larceny. It reads as follows: ''If any person in committing burglary shall also commit a larceny, he may be prosecuted for both offenses in the same count, or in separate counts of the same indictment, and, on conviction of such burglary and larceny, shall be punished by imprisonment in the penitentiary, in addition to the punishment hereinbefore prescribed for the burglary, not less than two nor exceeding five years.''

We accordingly hold, that the information is sufficient as to both form and substance. [State v. Moss, 216 Mo. 436; State v. Blockberger, 247 Mo. 600; State v. Burns, 263 Mo. 593, 173 S. W. 1070; State v. Moten, 276 Mo. 354, 207 S. W. 768; State v. Tracey, 294 Mo. 1. c. 389, 243 S. W. 1. c. 178.] .

II. It is contended by appellant that: ''The court erred in admitting in evidence testimony of Police William C. Murphy that Inspector of Police James E. Vasey told him, Murphy, to investigate the offense in question, at the same time communicating to Murphy the license number of an automobile.''

Hearsay.

Turning to the direct examination of witness Murphy, as shown by the bill of exceptions, we find that the following occurred:

"Q. What connection, Mr. Murphy, if any, did you have with the arrest of the defendant, Roy Tipton? A. Well, on March the 4th, about 5:50, the telephone rang at my house and I was instructed to go to the Witte Hardware Company at Third and Washington Avenue; that there were burglars in there. I responded down there and got in there and searched the place. There was nobody in there. Then they had a license number of a car, that was given to me and we immediately went—

"Mr. Harvey: License number of a car given to him, I don't see that that would be competent, your honor.

"The Court: As explaining what he did subsequently. It may be in explanation of his subsequent actions.

"Mr. Johnston: Q. Yes, not what was said, but from whom did you get the information as to the number of the license? A. Inspector Vasey."

It will be observed, that no legal objection was made to the above testimony, nor was any exception saved to the action of the court in admitting same. The record then continues:

"Mr. Harvey: I object to his information about something—whom did he get some information from, he says—and he is proceeding to tell whom he got it from, and, I presume, what was said.

"Mr. Johnston: No, I asked him not to say what was said.

"The Court: He may say a certain person gave him a certain license number and following that he went out and did something. I suppose that is all you want to prove on that, is it? Mr. Johnston: Yes.

"The Court: He may answer the question. It is in explanation of what he did subsequently.

"Which objection was by the court overruled; to which action and ruling of the court defendant by his counsel then and there duly excepted and still excepts.

"WITNESS:- I received the information from Inspector Vasey."

After this evidence had been given without any valid legal objection having been interposed, and without even an intimation that "hearsay evidence" was called for, the following occurred on the re-examination of witness Murphy in respect to other matters as follows:

"MR. JOHNSTON: The State now offers in evidence the schedules of property which had been taken, being exhibits A and B. The State will rest.

"MR. HARVEY: Lieutenant Murphy, your Honor, said something about some license number he was told of, and we objected to it at the time, because, even if it was connected up with anybody who had anything to do with this case at all, it was out of order, the evidence showing that the license was connected in some way with someone who had something to do with this affair. It would not be competent until such connection is first shown. The officer stated someone told him about some license number. If that person who told him about that had the license number, received the license number from anybody, or had been told by anybody that such a license number was connected with the case, then it might have become competent by putting in that evidence first; but the officer can't say somebody told me this license number was received from somebody else. I don't see how it is connected. Your Honor said he may connect it up. If he didn't I presume your Honor intended to intimate or say it would then be withdrawn from the jury.

"THE COURT: No, I said that would be competent merely for the purpose of explaining what Officer Murphy did afterwards. He got a license number which he said he thought he recognized belonged to an automobile of a man named Herman Tipton—not this defendant, but somebody else—and on the strength of that he ar-

rested two or three people. That is all there- is, to it. It is competent merely for the purpose of explaining what he did subsequently. It does not appear where the license number came from, or what if any connection it had with this case further than because he had this license number and thought an automobile to which it belonged was the property of a fellow named Herman Tipton, he had Herman Tipton arrested, and this defendant and some others.

"Mr. Harvey: The origin of the license number is not shown at all, and therefore it is not possible to connect it with anything, connecting this case with a man named Herman Tipton, or anybody else. Herman Tipton is not the person on trial, and the fact he had an automobile and had a license of a certain number, and the officer may have recognized that license number, does not show the license number figured in any way at all in this case.

"The Court: That is the officer's explanation of why he arrested Roy Tipton. Whether you think it is a good explanation or bad explanation does not change the fact that is the reason he arrested Roy Tipton. He has a right to explain why he arrested him. The evidence will stand. It is competent for that purpose.

"Mr. Harvey: We move it be stricken out and your Honor rules it will not be stricken out—

"The Court: I will not strike it out.

"Mr. Harvey:—for the reasons stated, and we save our exception again, as we did when the testimony was offered.

"To which action and ruling of the court defendant by his counsel then and there duly excepted and still excepts.

"State rests."

We are now asked by counsel for appellant to reverse and remand this cause for the reason that the communication from Inspector Vasey is hearsay testimony, and should have been excluded as such. Suffice it to say, no such objection was made to the admission of said tes-

timony, nor was any other legal objection attempted to be interposed, until after the above facts had been given to the jury without objection. This court will not convict the trial court of error on such an issue as the foregoing, even if there was merit in appellant's contention, unless a proper and timely objection had been made.

Before a trial court can be convicted of error in admitting "hearsay" testimony, it must appear from the record that the party complaining made a proper, timely and specific objection to the testimony when offered; and that he objected to the same when offered because it was "hearsay" evidence. If the testimony admitted had been objected to on the ground that it was "hearsay," and inadmissible by reason thereof, the trial court might have excluded the same, but the defendant's counsel saw fit to pursue the course above mentioned, and are in no position to assail the ruling of the court on the above question as "hearsay" testimony. This court, by an unbroken line of decisions, has held, on such facts as are here presented, that the appellant is not entitled to have the trial court convicted of error in respect to above complaint. [Gaty v. U. Rys. Co., 251 S. W. (Mo.) l. c. 61; and cases cited in Banc; Magill v. Boatmen's Bank, 250 S. W. (Mo.) l. c. 42-3; Unrein v. Oklahoma Hide Co., 295 Mo. l. c. 371, 244 S. W. 928; Morton v. Lloyd Construction Co., 280 Mo. l. c. 380, 217 S. W. 831; Threadgill v. United Rys. Co., 279 Mo. l. c. 473 and following, 214 S. W. 161; Heinbach v. Heinbach, 274 Mo. l. c. 315, 202 S. W. 1123; Elsea v. Smith, 273 Mo. l. c. 409, 202 S. W. 1071; State v. Lewis, 264 Mo. l. c. 429, 175 S. W. 60; State v. Tatman, 264 Mo. l. c. 370, 175 S. W. 69; Breen v. United Rys. Co. of St. Louis, 204 S. W. (Mo.) l. c. 521-3; Hafner Mfg. Co. v. St. Louis, 262 Mo. l. c. 634; State ex rel. v. Diemer, 255 Mo. l. c. 346, 350.]

III. Aside from what is said in the preceding paragraph, we are at a loss to understand how appellant was

Harmless Hearsay.

injured by the testimony complained of, even if timely, specific and proper objections had been made to the introduction of same. The evi-

dence now complained of when reduced to its last analysis might be stated as follows: Policeman Vasey called Policeman Murphy by telephone and requested him to go to the scene of the alleged crime and investigate the facts; that Vasey, in this conversation, gave Murphy the license number of the car belonging to defendant's brother; that Murphy thereupon arrested both defendant and his said brother.

In the brief of appellant's counsel, at page 14, it is said: "Vasey did not testify in the case, and there was not a syllable of evidence in the case that an automobile was used in committing the offense in question, not a particle of evidence that the brother of appellant or his automobile was seen in the neighborhood where the offense was committed, not a shred of evidence that appellant was with his brother when the offense was committed (or at any other time), or that appellant ever had or used or was ever seen in his brother's automobile."

The above statement is not controverted by counsel for respondent, and as was said in State v. Ray, 225 S. W. l. c. 974: "We feel legally justified in accepting as true, the above statements of appellant."

How, then, was he injured by the admission of said evidence, even if it had been timely and properly objected to when offered? Appellant relied upon an alibi, and denied that he was in the vicinity of the scene of the alleged crime. The testimony complained of, in connection with the facts as stated by counsel for appellant supra, enured to the benefit of appellant, eliminated the question as to whether the automobile of defendant's brother had any connection with the robbery, and in fact the evidence complained of utterly failed to connect appellant with the larceny in question.

Considered from any viewpoint, we are of the opinion that the foregoing assignment of error is devoid of merit and should be overruled.

IV. It is contended that "the instruction of the court defining larceny is erroneous." The instruction complained of is numbered three, and reads as follows:

"Third. The court further instructs you that if you acquit the defendant of burglary as heretofore de-

Larceny:
Definition.

fined you will then consider whether or not he is guilty of grand larceny, in which connection the court instructs you: If you find and believe from the evidence that at the city of St. Louis, at any time within three years next before the finding of the information herein, the defendant, Roy Tipton, did wrongfully take and carry away 95 revolvers of the value of $1765.88, 32 automatic pistols of the value of $506.32, 14 shotguns of the value of $702.87, eighteen baseballs and 9 gloves from the possession of Witte Hardware Company with the intent to fraudulently convert the same to his own use and permanently deprive the owner thereof without his consent, and that the same was the property of said Witte Hardware Company, and of the value of thirty dollars or more, you will find the defendant guilty of grand larceny, and assess the punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years."

The authorities cited by appellant in support of above contention are as follows: Sec. 3312, R. S. 1919; Hix v. People, 157 Ill. 382; State v. Casteel, 53 Mo. 124; State v. Sparks, 177 S. W. 346 (not officially reported); State v. Richmond, 228 Mo. 362; State v. Weatherman, 202 Mo. 7; State v. Rader, 262 Mo. 117; State v. Hayes, 262 S. W. 1034.

Section 3312, Revised Statutes 1919, relating to grand larceny, is heretofore set out in full. We do not consider the Illinois case of any persuasive force in considering this subject. In State v. Casteel, 53 Mo. 124, the court was considering the sufficiency of an *indictment* for grand larceny, and not an instruction defining same. In State v. Sparks, 177 S. W. 346, the instruction criticised is not set out, nor does it appear that the language used therein was similar to that used in the present case. The opinion was written by Judge WALKER, and regardless of what is said in the case, his more recent utterances sustain the validity of the instruction at bar.

The Sparks case was presumably re-tried in conformity to the views expressed by Judge WALKER, and again appeared in this court on appeal and is reported in 195 S. W. 1031, et seq. Judge FARIS wrote the last opinion, which is concurred in by Judge WALKER, in which the case was again sent back for a new trial and, in commenting on Instruction 1, it is said, page 1032: "We suggest the redrafting of this instruction and a following of the *form suggested* in State v. Rader, 262 Mo. 117, 171 S. W. 46, and State v. Ward, 261 Mo. loc. cit. 155, 168 S. W. 940."

Turning to the case of State v. Rader, 262 Mo. 117, and following, where the common law, decisions and statutes of our State are exhaustively reviewed by Judge FARIS, after a full consideration of the subject, on page 134, he announced the conclusion of himself and this Division, as to what an instruction on this subject should contain, as follows:

"Having regard to many of the common-law definitions of larceny which omitted the word 'felonious' and the variant holdings on this point and on analogous questions by this court, we conclude that an instruction for grand larceny ought to require the finding by the trial jury that the taking was with a felonious intent, but that the use of the specific words 'felonious' or 'feloniously' is not absolutely a prerequisite. This intent may be aptly defined by terms indicating the wrongful and fraudulent, or criminal nature of the taking, coupled with words charging the taking as being without the owner's consent and with the fraudulent intent to convert the property to the use of the taker and to deprive the owner thereof permanently. [Bodee v. State, 57 N. J. L. 140; State v. Slingerland, 19 Nev. 135; State v. Shepherd, 63 Kan. 545; State v. Yates, 159 Mo. 525; State v. Speritus, 191 Mo. l. c. 36; 35 Cyc. 148, and cases cited.]"

The case of State v. Ward, 261 Mo. l. c. 155, referred to with approval by Judge FARIS in the Sparks case, is in full accord with the ruling in the Rader case supra. The criticisms made by this division in State v. Ward, 261 Mo. l. c. 156-7, as to the construction which

should be placed on the rulings in State v. Richmond, 228 Mo. 362, and State v. Weatherman, 202 Mo. 1. c. 9, on this subject, meet with our approval. They are likewise in accord with the expressed views of Judge FARIS in the Rader case above quoted.

The case of State v. Hayes, 262 S. W. 1034, cited by appellant, does not even incidentally discuss the subject under consideration. In the Hayes case, the defendant was charged with murder in the first degree, and the instruction under consideration omitted the word "deliberation" etc.

After a careful and full consideration of all the authorities in this State, we have reached the conclusion that the instruction complained of in this case properly defined grand larceny, within the purview of the law as stated by Judge FARIS in State v. Rader, 262 Mo. 1. c. 134, where he was considering "feloniously" as used in Section 3312, Revised Statutes 1919. In formulating an instruction *without* the use of the word "feloniously," he said: "This intent may be aptly defined by terms *indicating the wrongful and fraudulent, or criminal nature of the taking, coupled with words charging the taking as being without the owner's consent and with the fraudulent intent to convert the property to the use of the taker and to deprive the owner thereof permanently.*"

While it might save litigation to follow well beaten paths in formulating instructions of this character, yet this court would not be warranted in reversing and remanding this cause, unless it should appear that the instruction as given, fails to properly state the law of the case. Without extending the opinion further, we hold that Instruction Three, heretofore mentioned, properly declares the law, and is in accord with the overwhelming weight of authority in this State. [State v. Bloomer, 231 S. W. (Mo.) 1. c. 569; State v. English, 228 S. W. (Mo.) 1. c. 749 and fol.; State v. Lippman, 222 S. W. (Mo.) 1. c. 440; State v. Hillebrand, 285 Mo. 1. c. 295, 225 S. W. 1. c. 1007; State v. Reagan, 280 Mo. 1. c. 60-1, 217 S. W. 83; State v. Massey, 274 Mo. 1. c. 589, 204 S. W. 541;

State v. Burgess, 268 Mo. 1. c. 415-16, 188 S. W. 135; State v. Baker, 264 Mo. 1. c. 354, 175 S. W. 64; State v. Rader, 262 Mo. 1. c. 134-5, 171 S. W. 46; State v. Ward, 261 Mo. 1. c. 156-7; State v. T. B. Smith, 250 Mo. 1. c. 371; State v. Helton, 234 Mo. 559; State v. Cummings, 206 Mo. 1. c. 623-4; State v. Speritus, 191 Mo. 1. c. 36; State v. Rowland, 174 Mo. 1. c. 377-8; State v. Yates, 159 Mo. 525; State v. Barton, 142 Mo. 1. c. 455; State v. Lackland, 136 Mo. 1. c. 30-1-2; State v. Woodward, 131 Mo. 1. c. 371-2, and cases cited; State v. Scott, 109 Mo. 1. c. 232; State v. Campbell, 108 Mo. 1. c. 613-14; State v. Martin, 28 Mo. 530, 1. c. 539.]

Upon a careful and full consideration of the authorities cited, we have reached the conclusion that the word "feloniously" was properly used in the information herein to classify the offense, but that it is not necessary to incorporate the same in an instruction defining the crime.

The information notified defendant that he was charged with the crime of grand larceny, in stealing goods, wares and merchandise from the store of the Witte Hardware Company of St. Louis, Missouri, on March 4, 1923. He defended the action on the ground that he was elsewhere on the date aforesaid. He denied his guilt, and relied on an alibi. The instruction complained of told the jury that, if they believed from the evidence, defendant "wrongfully" took the property described in the information from the possession of said company, "with the intent to fraudulently convert the same to his own use and permanently deprive the owner thereof without his consent, and that the same was the property of said Witte Hardware Company, and of the value of thirty dollars or more, you will find the defendant guilty of grand larceny," etc. The facts which the jury were required to find from the evidence, before a conviction could be had, constituted a proper definition of grand larceny.

In State v. Martin, 28 Mo. 530, defendant was charged with grand larceny, and the court gave, at the instance of the State, the following instruction.

"(1)  If the jury believe from the evidence that said Cheatham was the owner and possessed of the cattle mentioned in the indictment, and that defendant knowingly took and drove them away, in Benton County, against the consent of said owner, without any claim of right, and with the intent to deprive said owner of them and to convert and appropriate them to his own use, and thereby to defraud said owner of them, they will find him guilty.''

On page 539, Judge NAPTON affirmed a conviction, and said of the above instruction: "The question as to the intent in taking the cattle was submitted to the jury upon instructions fully explaining the law of larceny.''

The rule of law announced by Judge NAPTON has, in terms, been approved in many of the cases cited, up to and including, the latest utterances of this court on that subject by Judge WHITE in State v. Bloomer, 231 S. W. l. c. 569, as follows:

"Instruction No. 1 is objected to. It requires the jury to find and believe beyond a reasonable doubt that at the place and time designated in the instruction: 'The defendant did then and there steal, take, and carry away 13, or any less number of, hogs, about eight months old, weighing about 75 pounds each, of the property of W. C. Cooper, of any value, without any honest claim of ownership in them, and well knowing he had no interest or claim of interest in them, and with the intent to convert the same to his own use and to permanently deprive the owner of the use thereof and of his property in them,' etc.

"It was not necessary for the instruction further to require, in terms, that the taking was without the owner's consent. To find that he did steal and carry them away with intent to convert to his own use and permanently deprive the owner of the same would be a sufficient finding that it was without the owner's consent. [State v. Richmond, 228 Mo. l. c. 364, 128 S. W. 744.] Likewise, it was not necessary to use the word 'feloniously' in the instruction because the jury was required

State v. Tipton.

to find the facts, as set out in the part of the instruction copied above, which would constitute felonious taking. [State v. Massey, 274 Mo. l. c. 589, 204 S. W. 541; State v. Rader, 262 Mo. 136, 171 S. W. 46.]''

Without proceeding further in respect to this matter we hold that Instruction Three, complained of in this case, properly defined grand larceny, and that the trial court committed no error in giving same.

V. Counsel for respondent in their brief (ten-line brief) have cited three or four cases relied on by appellant, and concluded the same as follows: ''We concede that appellant's position is well taken.''

After a thorough examination of the law, we have reached a different conclusion as heretofore stated. The brief filed by respondent has been of little value to the court, as it did not undertake to discuss the question raised in Paragraph II of this opinion, and although counsel consented to a reversal of the case, failed to discuss any other question presented by the record which might come before the trial court, if the case had been remanded for a new trial.

Confessed Error.

VI. On the facts presented in the record, we are of the opinion that defendant received a fair trial and has been legally convicted, without error, upon substantial evidence. The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.