THE STATE v. ALFRED MEEKS AND DEWEY LAWTER, Appellants.—39
S. W. (2d) 765.

Division Two, June 5, 1931.

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Defendants, upon trial in the Circuit Court of Daviess County, were found guilty of burglary in the second degree, as defined by Section 4048, Revised Statutes 1929, and their punishment was assessed separately at imprisonment for six years in the penitentiary. From the judgments and sentences they appeal.

The case made by the State was that Jamesport is a small town in Daviess County. Bud Owens, employed by the Rock Island Railroad Company as a telegraph operator at Jamesport, was on duty at the railroad station on November 15, 1928, from four P. M. until midnight. About 11:30 o'clock that night, he saw parked near the station an automobile which he described as a dark-red touring car, with drawn curtains. It had a trunk behind, and, what he had never seen before, two spare tires. A man stood near the car. The night being cold, Owens invited the man to come into the station and warm himself at the stove. But the man, after talking to another unseen person, declined. Shortly before midnight, however, the man who had been so invited entered the station and stood for awhile beside the stove. Owens at the trial identified this man as defendant Lawter.

When Owens left the station at midnight, the strange car had departed, but on his way home, he saw it again, parked near a garage on the main street. Situated on the main street of Jamesport is the Home Exchange Bank Building, one part of which is occupied by the bank, a second part by the grocery store of J. C. Oxford, and a third part by the Pollock Dry Goods store, of which Owens's wife was manager. In the partition between the grocery store and dry goods store there were double doors which were open by day, but were locked and barred at night. Owens, after reaching home, decided to make further investigation of the automobile, with two spare tires. Accordingly he and W. F. Hutchison, the town constable and night-watch, drove past the strange car, which now was parked nearer the two stores than before, and apparently was not occupied. Owens, fearful for the dry goods store, got the keys from his wife, returned to the store and entered it. The hinges of the partition doors between the two stores had been unfastened. The doors hung loosely upon the bars and there was free passage

way from store to store. The front door of Oxford's grocery store had been forced open. After these discoveries, Constable Hutchison looked again for the strange car, but it had gone. He notified the Sheriff of Daviess county, who raised a hue and cry by telephone. In a short time Vincil West, marshal and night-watch at Winston, another town on the highway, arrested the defendants as they were driving through Winston, in the dark-red touring car. Owens identified Lawter and the car. Hutchison also identified the car. Early on the morning of November 16th, the defendants were placed in jail at Gallatin, the county seat, and the car was parked in front of the jail.

Mr. Oxford made a survey of his stock on the night that his store had been entered. He missed a number of packages of cigarettes from a carton which he had opened that day. The automobile was searched and sundry packages of the same brand as those which Mr. Oxford missed were found in places of seeming concealment. Among these packages found was one with a hole in the side. One of Mr. Oxford's customers, toward the close of business on the day of the burglary, had refused to accept a package of these cigarettes because it had a hole in the side. Mr. Oxford took back the package and replaced it in the carton. At the trial Mr. Oxford testified that the package with the hole in it, found in the automobile, looked like the package which his customer had rejected. A leaf of an automobile spring was found in the car of defendants. The end of this spring fitted into pressure marks upon the forced front door of Oxford's store.

Buel Wilds, a young man of Jamesport, while driving his mother and sister home from St. Joseph about one o'clock on the night of the burglary, saw the red touring car standing, as Owens had testified, near the garage on the main street of Jamesport. Mr. Wilds later identified the car in which the defendants were riding when arrested as the car which he had seen standing in Jamesport. The defense sought to prove by this witness that two citizens of Jamesport each had an automobile of the same make, color and model as the car in question. But both of these men testified on rebuttal that their automobiles were in their home garages on the night of the burglary and that their automobiles had only one tire in spare.

The defendants were half brothers and lived at Stanberry in the adjoining county of Gentry. Each had served a term in the penitentiary for grand larceny. Meeks had returned home from prison about two years and Lawter about six months before the burglary of Oxford's store at Jamesport on November 15, 1928. The defendants testified that the red touring car in which they were riding when arrested was in need of an armature for the generator. They had sought in vain to buy a second-hand armature in Stan-

berry, King City, Albany and St. Joseph. Some one in St. Joseph informed them that they might be able to buy an armature in a wrecking yard at Trenton. On the day of the burglary they left their home in Stanberry in Gentry County for Trenton, in Grundy County, eighty miles distant. On the way they crossed Daviess County, which is between Gentry and Grundy, passing through the towns of Maysville, Cameron, Winston, Altamont, Gallatin, Jamesport and thence on to Trenton which they reached about nine o'clock on the evening of the burglary. They did not know the name or the location in Trenton of the wrecking yard. They inquired of a policeman for a man named Cunningham who they thought might tell them where the wrecking yard was. When the policeman could not inform them they made no further search or inquiry. They left Trenton a half hour after midnight and were arrested at Winston on their eighty-mile return journey to Stanberry. On their way to Trenton they did not stop nor park their car when passing through Jamesport on the highway. They denied that they broke into the Oxford store. They denied also that they had hidden the seven or eight packages of cigarettes which later were found in the automobile. Each of the defendants had in his possession when arrested a package of the same brand of cigarettes, but these they said they bought in Cameron, although they were not their favorite smokes. Defendant Meeks at first denied that, in addition to a term of imprisonment in the penitentiary, he had been an inmate of the Reform School at Boonville. But later he admitted this fact when he was shown the record.

The trial lasted two days. The bill of exceptions contains over 300 typewritten pages. It is therefore regrettable that the defendants did not file a brief and were not represented in this court by counsel. The court has examined the whole record for error under its settled construction of the applicable statute. [Sec. 3760, R. S. 1929.]

I. The information contains all the essential elements of the statute and properly and sufficiently charges burglary in the second degree. [Sec. 4048, R. S. 1929; State v. Goddard, 316 Mo. 172, 289 S. W. 651; State v. Tipton, 307 Mo. 500, 271 S. W. 55.]

II. Defendants in their motion for a new trial assign as error that the court permitted the witness, Bud Owens, to narrate a conversation with his wife on the night of the burglary, out of the presence of the defendants. In his examination in chief by the prosecuting attorney the witness Owens attempted to narrate the conversation with his wife, but the court stopped him upon objection by the de-

fendants. Upon cross-examination, counsel for the defendants pressed the witness hard to tell why, after he had gone home, he changed his mind about retiring, and decided to go back to town, find the night-watch, and investigate the strange automobile and its occupants. The examination in part was as follows:

"Q. Well, tell the jury why you changed your mind and went back down town? A. Well, you wouldn't let me while ago.

"Q. Well, I want you to tell it now. A. Well, I told my wife . . ."

The witness was stopped with objections and at the same time plied with the repeated question: "What is the reason you changed your mind?"

The court finally directed: "Go ahead and tell it. If it takes a conversation with your wife why tell us. He asked for it."

And the conversation of the witness with his wife was:

"Well, I told her the circumstances and things that happened, and I told her I believed I would call Mr. Hutchison. 'Oh,' she says, 'I don't believe I would bother him.' And I said, 'All right.' And pretty soon I said I was going to call him."

On motion all the conversation of the witness with his wife was stricken out. And the court gave at the request of defendants, an instruction to the jury that they should, in arriving at a verdict, disregard all testimony which the court had ordered stricken out of the record. In view of the persistence of defendants' counsel in questioning the witness why he changed his mind about going down town, the harmless character of the objectionable conversation and the instruction given, the conversation between Owens and his wife is not reversible error.

III. Defendants also assign as error the admission of testimony of W. T. Hutchison, constable of Jamesport, that he found in the defendants' automobile packages of cigarettes heretofore mentioned in the statement of facts. Defendants complain first that Hutchison searched the automobile after it had been parked near the jail for two days and one night and the search was therefore too remote from the date of the crime. They next object that the defendants were charged with burglary only and not with larceny, and that the cigarettes were no evidence of the crime of burglary. Let it first be said that defendant Meeks, accompanied by Constable Hutchison, drove the car from Winston, the place of arrest, to Gallatin, the county seat, arriving early Thursday morning after the burglary. Whether the officers put the car in a garage Thursday evening or Friday evening was a question on which there was much testimony both ways. Those sometimes troublesome problems of the nearness or remoteness of the possession of property

arise in larceny cases rather than in burglary cases. No instruction upon presumptions arising out of the presence of the cigarettes in the automobile was given to the jury. There was no evidence tending to show in the slightest degree that any one had concealed the cigarettes in the car after the defendants had lost exclusive possession of it. The only purpose for which the cigarettes were offered in evidence was to identify the defendants with the burglary and to prove one of the elements of the burglary charged namely—intent to steal the goods, merchandise and valuable things in the Oxford store. There is no error in this assignment.

IV. The demurrer to the evidence was properly overruled. There was sufficient evidence that the automobile of the defendants was parked in Jamesport about the time of and close to the place of the burglary. The defendant Lawter was seen in Jamesport at that hour. To these and to other facts in evidence may be added the improbability if not impossibility of the defendants driving across three counties to buy an armature for the generator of the automobile which they were driving and which meantime was exhausting what stored current it may have had.

V. The given instructions were proper. The court instructed the jury upon all questions of law arising in the case which were necessary for their information in giving their verdict. The assignment of error, directed generally to all of the given instructions, is more specific as to Instruction Nine. This instruction directed the jury to find the defendants guilty of burglary in the second degree, if the jury should believe and find that the defendants "did wrongfully and forcibly break and enter into the store building of James C. Oxford with the intent to steal therein, and that in said store building goods, wares and personal property of any kind and of some value, however small, were at the time by said James C. Oxford kept and deposited." The error alleged is that the instruction did not require the jury to find that the defendants "burglariously broke into said building." In State v. Tipton, 307 Mo. 500. 1. c. 515, 516, 271 S. W. 55, it was ruled that the omission of the word "feloniously" from an instruction in a larceny case was not error. This well considered case stressed the utterances of this court in State v. Rader, 262 Mo. 117, 1. c. 134, in which it was held that the use of the specific words "felonious" or "feloniously" is not absolutely a prerequisite. This intent may be aptly defined by terms indicating the wrongful and fraudulent or criminal nature of the taking, etc. By the same reasoning it follows that the use of the word "burglariously" in the instruction in the instant case is not absolutely a prerequisite in view of the

wrongful and forcible entry and criminal intent which the instruction required the jury to find. In the Tipton case it was pointed out that the word "feloniously" which was omitted from the instruction was included in the information. So, too, here, the word "burglariously" although missing from the instruction, is to be found in the information.

VI. A fourth assignment of error is that the court permitted the State to cross-examine the defendant Alfred Meeks about a statement of his prison record which was handed to him, he not having been asked about it on direct examination. It is also objected that Meeks on cross-examination was compelled to testify that he had pleaded guilty to grand larceny and to testify what he had stolen. In his direct examination Meeks testified, in answer to questions of his own counsel, that he had served three years in the state penitentiary, that he was released in 1925, and that he had driven a bus and had lived an upright life in Stanberry up to the time of his arrest for the offense for which he was on trial. And counsel for both defendants in his opening statement said that they had been in prison, but that after their release they had been good citizens. On cross-examination Meeks denied that, in addition to serving a term in the penitentiary, he also had been an inmate of the State Reform School at Boonville. But after he was shown the prison record, he admitted that he had been sentenced to the Reform School. A person who has been convicted of a criminal offense is made a competent witness by statute. But that statute (Sec. 1752, R. S. 1929) provides that: "The conviction may be proved to affect his credibility, either by the record or by his own cross-examination upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." It is settled law that a defendant in a criminal case testifying in his own behalf may be impeached as any other witness in the case. [State v. Ross, 306 Mo. 499, 267 S. W. 853; State v. Bugg, 316 Mo. 581, 292 S. W. 49.] This assignment of error is without merit.

VII. The defendants complain that the court erred in permitting the State to bring out evidence to the effect that the defendant Lawter had been unable to give bail bond from the time of his arrest to the day of trial, and that the defendant Meeks had been released on bond only a few weeks before his trial. A number of witnesses, called by the defendants, answered that the reputations of the defendants for "honesty, fair dealing and good citizenship," since they had come

back to Gentry County from the penitentiary was good. The witnesses were not asked as to the reputation of the defendants for truth, veracity and morality. The witnesses by their answers to the question put, said that, in their opinion, the defendants were honest men, they were fair in their dealings with their fellowmen and they were good citizens. The defendants in this case, with the opening statement of their counsel placed their reputation as good citizens at issue and they kept it at issue to the close of the trial. But the inability of good citizens to give bail bonds in counties in which they do not reside and are unknown is a matter of common knowledge. The prosecuting attorney therefore was subject to criticism for calling to the attention of the jury the failure of the defendants to procure their release from jail in a strange county. But, upon the record in the case, such conduct cannot be said to be reversible error.

VIII. On the facts presented in the record, we are of the opinion that the defendants received a fair trial, and have been legally convicted without error, upon substantial evidence. The judgments below are accordingly affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.