**STATE v. McCORMACK.**

No. 43708.

Supreme Court of Missouri.
Division No. 2.

Jan. 11, 1954.

Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Elmer McCormack was prosecuted as an habitual criminal, Section 556.280 RSMo 1949, V.A.M.S., for the offense of grand larceny, in having stolen at the City of St. Louis, on August 9, 1951, certain valuable truck wheels, tires and tubes from E. B. Jones Motor Co., a corporation. The jury found in favor of the accused on the issue of his prior felony convictions (alleged to have been five in number), but found him guilty of the grand larceny charged, and assessed his punishment at two years' imprisonment in the penitentiary, the minimum prescribed by statute for that offense. Sections 560.160(2), 546.490 RSMo 1949, V.A.M.S. He appealed from the ensuing judgment and sentence, and filed here a full transcript, but no brief. We look, then, to the motion for a new trial for his assignments of error, and consider such of them as are sufficient under the statute. Section 547.030 RSMo 1949, V.A.M.S., to preserve anything for appellate review. In the latter category is one challenging the sufficiency of the evidence, and it will be examined first.

It was shown by the manager of the truck department of the motor company in question that on August 9, 1951, the company had on its parking lot approximately 15 "brand new" Dodge trucks; that he inspected them about 5:30 that evening (as was his custom) and found all vehicles (including wheels and tires) intact; that he inspected them again the next morning, and discovered one of the 2½ ton trucks jacked up and its two front wheels and the two outer rear dual wheels were missing; also the outside rear dual wheels had been taken from an adjacent 1½ ton truck. Mounted on each wheel was an 8.25 x 20, 10 ply Goodyear tire together with tube, the value of each unit being approximately $125. The removal of this equipment was unknown to the owner, and wholly unauthorized.

Everett Bert Brown, a cab driver and associate of defendant, testifying for the State, swore that at about 1:30 on the morning of August 10, defendant McCormack and one Ray Williams brought two truck wheel-tire-tube units to his (witness') home, got witness out of bed and obtained his permission to leave the articles just mentioned at the rear of the house, which was done. The witness then gave the details of how he made two trips later that night with defendant and Williams to the motor company's parking lot from which defendant told him the two units mentioned had been removed. The lot was dark, and there was no attendant. He stated that on each of such trips to the lot he (witness) drove his own car, a taxicab, and that when defendant and Williams got out at the dark parking lot, he was instructed to allow them 15 or 20 minutes, and then return for them, which he did. On both occasions defendant and Williams emerged from the lot with two additional units which, in turn, were taken to the Brown residence and cached in a shed there. About 9 o'clock the following Monday night defendant, accompanied by a soldier, came by the Brown residence, and informed witness that he had a place to sell the units at Farmington. Defendant complained at that time that one of them

was missing. The five remaining ones were then loaded into cars—three in defendant's 1946 convertible Buick, and the other two in Brown's cab, and the trip to Farmington commenced, each owner driving his own vehicle.

Enroute to Farmington, defendant admittedly suffered an accident in which his car left the highway, and turned over several times. It was wrecked; he was injured, and taken to a hospital. The three units he was transporting were retrieved at the scene by a highway patrolman. Brown proceeded on to Farmington and delivered the two units in his car at a residence in that place. A few days later they were taken into possession by the highway patrol. Three of the units thus recovered were delivered through the highway patrol and the St. Louis Police Department to the motor company, and by it reinstalled on the vehicles. The other two units were retained for use as evidence, and introduced at the trial.

Defendant sought to establish an alibi and to show that he was ill at the time, but as accounting for his admitted possession of the tires at the time of the wreck, his testimony was to the effect that he had accepted them from Brown in satisfaction of a $462 debt owed to him by Brown for work as a mechanic in repairing Brown's taxi.

■ The evidence we have related was clearly sufficient to make the question of defendant's guilt one for the jury, so the contention that the court should have directed a verdict in defendant's favor is without substance.

■■ Complaint is made that the two units introduced in evidence as State's Exhibits "1" and "2" were not properly identified. A further point is attempted to be raised in that same connection, that is, that the court improperly received hearsay evidence in permitting the State to show by testimony of the two highway patrolmen (over defendant's objection) that the serial numbers on the tires when they came into their possession (and as recorded by them, respectively were the same as those appearing on Exhibits "1" and "2". While the evidence shows that the motor company did not have a record of the serial numbers of the stolen tires, nevertheless the manager of its truck department testified that the exhibits in question were the same make, size and type as the missing units, that is, 8.25 x 20, 10 ply Goodyears on 5-stud truck wheels. Brown testified that he assisted defendant in loading three of the units (previously shown by him to have come from the motor company's parking lot) into the Buick which was wrecked, and that he (Brown) took the other two to the place in Farmington from which they were gotten by one of the patrolmen. This patrolman recorded the serial numbers on these particular tires, and from his memorandum thereof identified one of them as State's Exhibit "1". The same process was repeated by the other patrolman with respect to the three units he found at the scene of the accident, one of which he similarly identified as State's Exhibit "2". The two thus introduced were traced from the parking lot to the point at which they were introduced in evidence. It is no objection to the identification of serial numbers in a situation of this kind for a witness to refresh his recollection from a record thereof previously made by him. Both contentions are, accordingly, disallowed.

■ Error is assigned in permitting Brown to testify in rebuttal "to certain direct evidence for the reason it was improper rebuttal, and was material for the case in chief, and should have been presented during the case in chief." This assignment is lacking in the particularity required by Section 547.030 RSMo 1949, V.A.M.S., for the obvious reason that whereas Brown's rebuttal testimony was directed to six or eight subjects, the offending matter is not identified by the assignment. It is not claimed (nor could it have been legitimately) that the entire rebuttal examination was improper. Additional assignments complaining of other allegedly improper rebuttal testimony need not be developed, it being sufficient to say that

even if they be regarded as complying with the motion for new trial statute, the testimony of which complaint is now made was either not objected to at the trial, or was so manifestly proper in rebuttal as to require no discussion.

■ Defendant also complains of the action of the court in excluding his offer of records of City Hospital in relation to his physical examination on August 7, 1951 (the date of his admission) together with the diagnosis, treatment and disposition of his case, including an X-ray report. The court did permit the reading of so much of the receiving room card as showed the name of patient, "Elmer McCormack; date 8/7/51; occupation, mechanic; brought to receiving room from work and sent to home. Brought in by a friend; 27 years old. Time in city, life. Brought in at 6:45 P.M." Defendant has failed to show that he was in anywise prejudiced as a result of the ruling now under attack, this for at least two reasons: (1) His offer of proof fails to indicate the contents of the excluded records, or what, if anything, they would reveal in connection with the subjects of which they treat; (2) nor was the mode of its preparation shown, including whether made in the regular course of business at or near the time of the act, condition or event, etc., as provided by Section 490.680 RSMo 1949, V.A.M.S., under The Uniform Business Records as Evidence Law.

■ Four instructions were attacked by the motion for new trial, but inasmuch as two of them had reference solely to the habitual criminal aspects of the charge, and the jury having found in defendant's favor on that issue, complaints directed against these two have necessarily passed out of the case. With respect to the attack on the others (State's instructions numbered 1 and 2), the only semblance of compliance with the motion for new trial statute are the charges that such instructions severally constituted comments on the evidence, and that they were bad for vagueness, indefiniteness and uncertainty. No. 1 was the State's main instruction, and No.

2 defined larceny. Reproducing them here, either verbatim or in summary, would serve no real purpose because neither may, by any stretch of the imagination, be said to be at all erroneous or in anywise deficient in the respects charged.

Defendant's final point is that the court should have declared a mistrial, as requested, because of an allegedly improper statement by the prosecutor in volunteering information to the jury that defendant was then out on bond in St. Louis County on another charge. The record upon which this assignment is based is as follows:

"Mr. Hennelly: Let's take Mr. Brown's testimony. You remember the first question I asked Mr. Brown last night, I said, 'Mr. Brown, as a matter of fact, you are on bond for a burglary and larceny charge in St. Louis County, aren't you?'

"Mr. Walsh: I object to that, highly improper, nothing to do with this case. McCormack is also on bond out there.

"Mr. Hennelly: One moment, if Your Honor please. I must put something in the record. Pursuant to Mr. Walsh's statement that Mr. McCormack is also out on bond, I am going to ask a mistrial be declared. It is highly prejudicial to the rights of the defendant.

"The Court: Motion overruled.

"Mr. Hennelly: Exception.

"The Court: There is no evidence of that. Members of the jury, you are instructed to disregard the statement of the State's Attorney to the effect that defendant is also out on bond."

■ The record does show that defendant's counsel was permitted, over the State's objection, to elicit from the witness Brown on his cross-examination that he was, at that very time, "on bond for burglary second out in St. Louis County." This showing was manifestly improper because it did not tend to establish a prior conviction for the offense. Counsel should

have been content with the showing he was thus improperly permitted to make. When in argument he undertook to further his advantage, the prosecutor did exceed the bounds of propriety in making the challenged statement, but in so doing he was hardly more culpable than defendant's counsel in the conduct just mentioned, so this assignment would seem to amount to little more than that of the pot calling the kettle black, and in view of the court's prompt and incisive admonition to the jury to disregard the statement, we are disposed to view the incident as an irregularity, but nonprejudicial.

The record proper has been examined, and no reversible error has been found in it. The judgment should be, and it is, affirmed.

All concur.