Vernon F. NEUBAUER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15553.

United States Court of Appeals
Eighth Circuit.

Jan. 21, 1958.

Sidney M. Glazer, Berkeley, Mo. (Mark M. Hennelly, St. Louis, Mo., was with him on the brief), for appellant.

Forrest Boecker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., was with him on the brief), for appellee.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and WEBER, District Judge.

SANBORN, Circuit Judge.

This is an appeal by Vernon F. Neubauer from a judgment entered upon the verdict of a jury finding him guilty under counts one and three of a four-count indictment charging him and Marion F. Langenberg, under 18 U.S.C. § 1341, with having used the mails in furtherance of a scheme to defraud certain banks and banking institutions (hereafter referred to as "the banks") which had made loans to the Jefferson Loan Company, Inc., by means of a false financial statement showing that company to be in a sound and solvent financial condition as of July 31, 1951, thereby leading the banks to believe that their outstanding loans to the Loan Company were safe and secure, and, so believing, to refrain from demanding payment of their loans.

The first count of the indictment charged that, in furtherance of their fraudulent scheme, the defendants on December 22, 1951, mailed a letter containing the false financial statement to E. T. Murray, Vice President, Mutual Bank and Trust Company, St. Louis, Missouri. The third count contained the same charge as the first count, except that the letter referred to was one sent to Fred Bissell, Vice President, American Trust Company, New York.

The indictment was returned on June 28, 1955. The trial commenced on February 27, 1956. The case was submitted to the jury March 2, 1956, after the court had denied separate motions of the defendants for a directed verdict of acquittal. The jury on the same day returned a verdict of guilty against both defendants upon counts 1 and 3, the only counts submitted to it by the court. The defendant Neubauer was sentenced by the court on March 9, 1956, to two years imprisonment under each of the two counts, the sentences to run concurrently. At the same time the court set aside the verdict of the jury as to Neubauer's codefendant, Langenberg, on the ground that the evidence was insufficient to sustain the verdict finding him guilty of participation in the scheme to defraud. Notice of appeal was filed by Neubauer March 16, 1956. The case was submitted to this Court November 21, 1957, (more than twenty months after the filing of the notice of appeal) upon the original files of the District Court and a typewritten transcript of the proceedings at the trial.

The alleged errors of the District Court upon which the defendant Neubauer relies for reversal relate to rulings on evidence, the denial of a motion for a mistrial, and the denial of a motion for a directed verdict of acquittal.

██ In considering these alleged errors, it is necessary to keep in mind that the burden of demonstrating both error and prejudice is upon the defendant (Hunt v. United States, 8 Cir., 231 F.2d 784, 788; Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645), and that this Court must give to the Government the benefit of every reasonable inference which can be drawn from the evi-

dence viewed in the aspect most favorable to the Government. United States v. Manton, 2 Cir., 107 F.2d 834, 839; Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

The evidence shows that the defendant Neubauer was the President and actively in charge of the business of the Jefferson Loan Company, which consisted of loaning money, buying accounts receivable, and borrowing money from banks and banking institutions to finance its operations; that the financial statement of the Loan Company of July 31, 1951, furnished by mail to the banks referred to in the indictment was false and misleading in that it grossly overstated the current assets of the Company, and included, as such assets, loans made by it which were worthless and uncollectible and which should long since have been charged off its books as bad debts.

The record shows that, after the Company had been forced into receivership the defendant Neubauer, in connection with a petition to the Tax Court, made an affidavit which contained the following statement with reference to the tax liability of the Company for the fiscal years ended January 31, 1950, and January 31, 1951:

"Petitioner states that as a result of an examination made of the accounts and records of the petitioner by representatives of over ten banks to which petitioner is presently indebted on unpaid bank loans approximating $1,000,000.00, it appears and petitioner so avers that it has erroneously failed to charge off worthless and uncollectable loans and discount receivables in the amount of about $959,000.00 as bad debts, losses and expenses in computing petitioner's taxable net income for the fiscal years here in question."

We conclude from an examination of the record on appeal that the question of the guilt or innocence of the defendant Neubauer was a question of fact for the jury, and that the trial court did not err in denying his motion for a directed verdict of acquittal.

Actually, the only defense that Neubauer had at the trial was that in furnishing the financial statement to the banks to which the Loan Company was indebted he had acted in good faith, with honest intent and in reliance upon his accountants, and that he did not know or believe that the worthless loans included as assets in the financial statement were uncollectible. He testified fully in his own behalf at the trial. His evidence covers 127 pages of the transcript. He stated: "I felt like every loan when it was made was a good loan"; and "According to my definition, which is commonly accepted in the finance industry, I did not consider them bad debts." He also stated: "In March, of 1952, after the banks had taken physical control of Jefferson Loan Company" and proposed to charge off a certain number of loans as bad debts, he protested "that those loans weren't bad debts and that I still considered them collectable."

The position of the defendant Neubauer at the trial was fairly and accurately stated by the court in the charge to the jury as follows:

"Now, with respect to the position of the defendants, defendant Neubauer denies each and every one of the charges in the two counts of the indictment I am submitting to you and as I understand it, it is the position of the defendant he did not devise or intend to devise the scheme mentioned in the evidence; he did not knowingly make any false statement to the bank, and he did not knowingly make any false statement reflecting the financial condition as of July 31, 1951; that he felt the loans had been placed in the proper category by his auditors and accountant and that the receiver, that is the person who took over the Jefferson Loan Company, was inexperienced and did not make a thorough attempt to collect the debts of the Jefferson Loan Company and that the banks relied upon Joe Mitchell's guarantee and so did the receiver; that Neubauer thought it was an acceptable

practice to renew various lines of credit to the debtors of the Jefferson Loan Company; that defendant Neubauer felt that the banks were aware of this type of business and type of custom and the banks knew consumer credit was more risky than ordinary bank loans and therefore required Joe Mitchell's personal guarantee and that any error made in the preparation of the financial statement was made in good faith, since Neubauer had nothing to do with the bank's statement and relied upon a certified public accountant for that fact. Now, that is the position of the defendant Neubauer in this case."

The evidence shows that the Joe Mitchell referred to in the court's charge was a certified public accountant, the owner of the stock of the Loan Company, who furnished the original capital and employed the defendant Neubauer, who had been in the finance business, as its President.

The defendant contends that the court, by sustaining objections of the Government to certain questions put to him, erroneously and prejudicially limited his opportunity to show that in furnishing the financial statement to the banks he acted in good faith and without an intent to defraud.

■ Neubauer was not permitted to testify, over objection, that the reason that more of the loans made by the Loan Company were not charged off as bad debts prior to the financial statement in suit, was that Internal Revenue authorities had asserted that too high a reserve for bad debts had been set up by the Company. We fail to perceive the materiality or competency of that testimony. What the agents of the Internal Revenue Department may have thought about the Company's reserve for bad debts, could not justify or excuse including bad debts, known to be bad, as current assets in the financial statement furnished the banks. Moreover, Neubauer could not take the position that he considered the loans good and collectible, and then claim, in effect, that they were bad but had not been

charged off because he thought the taxing authorities might object.

■■ The appellant contends that the court erred (1) in excluding his testimony that the creditor banks renewed their loans to the Loan Company by adding past due interest to principal; (2) in excluding his testimony that he was told by an officer of one of the banks that the banks did not care whether or not they collected their loans to the Company; (3) in not allowing the appellant to ask this officer, on cross-examination, whether he had told the appellant that he (the officer) was not interested in collecting the loans to the Company; and (4) in not allowing the appellant to cross-examine an officer of another creditor bank as to whether the reason the banks did not call their loans was that they planned, for tax purposes, to deduct the loans as bad debts in an excess profits year.

We find no merit in any of these contentions. The crucial issue in the case was whether or not Neubauer, in mailing the false financial statement in suit to the creditor banks, did so with fraudulent intent,—not whether the banks had added past due interest to principal in renewing the loans made to the Company, or whether they expected the Company to repay its loans, or what they expected to do for tax purposes if their loans were uncollectible.

■ Another contention of the appellant is that the receiver of the Loan Company should not have been permitted to testify, over objection, that little or nothing was collected from nine accounts of the Loan Company. The false financial statement which included these loans as assets was dated July 31, 1951. The receiver appointed by the court took charge of the Loan Company on March 18, 1952. Prior to his appointment, the Company had been in the hands of a trustee under an assignment for the benefit of creditors. The evidence showed that the receiver attempted to liquidate the various accounts of the Company, and succeeded in collecting virtually nothing on nine accounts which the Government's evidence indicated were

worthless prior to the time the false financial statement was mailed to the creditor banks. The testimony of the receiver certainly tended to substantiate the Government's claim that the accounts in question were worthless and that the financial statement of July 31, 1951, was false, and to refute Neubauer's assertion that he believed them to be collectible on that date.

■ The appellant's contention that the court should have declared a mistrial because counsel for the Government at the trial had referred to certain invoices carried on the books of the Loan Company and reflected in the financial statement of July 31, 1951, as "bogus", and had failed to establish that they were "bogus", is overruled on the authority of Dolan v. United States, 8 Cir., 218 F. 2d 454, 460,—the court having instructed the jury to disregard the reference. It was one of those matters which reasonably could not be regarded as having affected the result of the trial. See Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680.

The judgment appealed from is affirmed.