**STATE of Missouri, Respondent,**

v.

**Billy Gene CHASE, Appellant.**

**No. 53220.**

Supreme Court of Missouri, En Banc.

June 9, 1969.

Rehearing Denied Sept. 8, 1969.

Norman H. Anderson, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

Shaw, Hanks & Bornschein, L. L. Bornschein, Clayton, Mo., for appellant.

STORCKMAN, Judge.

The defendant was convicted of stealing a ring valued at more than $50. Sections 560.156 and 560.161, RSMo 1959, V.A.M.S. The jury assessed his punishment at two years in the custody of the Department of Corrections. The issues presented by the defendant on appeal relate to the sufficiency of the evidence.

On December 27, 1963, shortly before 5 p. m., the defendant accompanied by a woman and another man, "a short, chunky colored man", entered West's Jewelry Store in Fulton which was owned and operated by Claud West. The store was about 18 feet long and 16 feet wide, with showcase counters on each side and an aisle in the middle. Jewelry was shown on top of the cases or counters and customers stood while they were viewing it. The defendant asked to see some men's quarter carat diamond rings. Mr. West brought out men's rings and put them on top of the showcases. The defendant went to the door and pointed to a ring in the window. Mr. West got one or two out of the window, the rest he got out of a showcase. As he recalled, there were "three in the box and maybe two or three in a tray." The tray also contained ring mountings without stones.

The defendant looked at the rings, picked up one, looked at it, shook his head and said it was high. He put that ring back in the tray; it was originally in a box. The woman and other man also stood along the counter and looked at the rings, but the defendant was the only person Mr. West saw handle anything although the others could have. Mr. West also showed the defendant some unset diamonds which he brought from a table near the watch counter. He displayed the diamonds under a light and explained the difference in grade and the reason for the fluctuation in prices. While he was doing this, the woman and other man were looking around and also looking at the diamonds. He did not know what they were doing all of the time. The defendant finally walked over towards the door and one of them said, "Let's go." The defendant and his companions were in the store not over ten minutes.

The rings had remained on top of the showcase all the time the defendant and his companions were in the store. After they left, Mr. West discovered that two of his rings were missing. One of the boxes had a ring in it that did not belong to him; he referred to it as "a phony ring". Mr. West called the local authorities. A deputy sheriff learned that a 1961 Thunderbird with a Missouri license numbered KZ0872 had been in the vicinity of the jewelry store at the time in question. The license had been issued to defendant. A warrant for defendant was issued and a pickup order sent to the police in St. Louis.

Mr. West further testified the defendant was the only one that did any talking while

in his store. Although the woman may have made some remark, the other man did not say a word. This other man did not ask to see the rings and did not pick them up and handle them. The woman did not pick them up or handle them. The only person who Mr. West saw handle anything in his store was the defendant.

On January 10, 1964, a St. Louis police officer, James Weber, who was acquainted with defendant and knew about the arrest warrant and pickup order, arrested defendant around 2:25 p. m. at the intersection of Seventh and Olive Streets in St. Louis. When halted by Weber, the defendant was riding in the left rear seat of his 1961 Thunderbird. A woman was sitting in the back seat with the defendant. The car was being driven by a second man and another woman was sitting in the right front seat.

When Officer Weber stopped the car, he opened the door on the right-hand side, ordered defendant out of the vehicle and informed him he was under arrest. Officer Weber was assisted by another St. Louis policeman, Officer Tindall, who was on duty nearby. The officers searched defendant alongside his car for a weapon, found none, and then ordered him into the patrol car. They also ordered the driver of the Thunderbird out of the car and searched him for a weapon but found none. The women were not searched. The driver was told to get back in the defendant's car and instructed to drive it to police headquarters. Officers Weber and Tindall followed it in the patrol car taking the defendant with them.

Police headquarters were at Twelfth and Clark which was seven or eight blocks from the scene of the arrest. Upon arriving there, both cars were placed on the parking lot at the rear of the building. The defendant was taken inside by Officers Weber and Tindall. The defendant's companions waited on the parking lot. The defendant was kept in the police station. When Officer Weber returned to the parking lot, the defendant's three companions were standing alongside the defendant's automobile. Officer Weber searched the defendant's Thunderbird and found a yellow metal man's ring with five white stones in a white metal setting on the floor "approximately where the defendant was sitting" in plain view. This ring was identified by Mr. West as one of the missing rings valued at $100. Officer Weber testified it was approximately 10 to 15 minutes from the time defendant was apprehended on Olive Street until the car was searched on the police lot.

Defendant's three companions were not arrested. The record is silent as to their identity and whether any of them were with the defendant in Fulton. The defendant offered no evidence.

■ In determining the sufficiency of the evidence in a criminal case after a verdict of guilty, the court accepts as true all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom and disregards all contrary evidence and inferences. State v. Webb, Mo., 423 S.W.2d 795, 799[6]; State v. McClinton, Mo., 418 S.W.2d 55, 57[2]; State v. McGlathery, Mo., 412 S.W.2d 445, 447[1]; State v. Morris, Mo., 307 S.W.2d 667, 688[1]; State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 118–119[1]. The Bayless case states that "in ruling the issue presented we are required to view the whole evidence in a light most favorable to the State."

■ The first of defendant's "POINTS" is the general statement that: "The State offered no direct nor positive evidence establishing the charge of 'Stealing' as to this Defendant, there being no positive identification of the property alleged stolen (State Exhibit 2)." Exhibit 2 is the ring found in the defendant's Thunderbird when the defendant was arrested in St. Louis. The evidence traces the custody of the ring from the time it was discovered in the

automobile until it was offered in evidence at the trial. The ring had an unusual number and arrangement of stones and bore the mark of the manufacturer but not of the West Jewelry Store. Mr. West testified that it was the ring which disappeared from his store on December 27, 1963, although he could not say that no other similar rings existed. The proof that exhibit 2 was in fact the stolen ring is also bolstered by the fact that it was found in the automobile of the defendant who was present in the Fulton jewelry store when the ring disappeared. Any fact, including criminal agency of the defendant and the identity of the property stolen, may be proved by circumstantial evidence. State v. Brewer, Mo., 325 S.W.2d 16, 20[11]. The ring was sufficiently identified and was properly admitted in evidence. State v. McCormack, Mo., 263 S.W.2d 344, 346 [3]; State v. Gyngard, Mo., 333 S.W.2d 73, 79[10], 90 A.L.R.2d 639; State v. Page, Mo.App., 192 S.W.2d 577, 578[3]. The defendant's contention is denied.

Following this initial statement are four paragraphs in the nature of statements of position which hardly satisfy S.Ct.Rule 83.05(a) (3), V.A.M.R., but we will undertake to consider them. The defendant asserts the fact that he was present at the time the property was stolen is insufficient to support his conviction of its theft, citing State v. Favell, Mo.App., 411 S.W.2d 245. In Favell the evidence showed that the defendant was seen standing in front of an office from which a typewriter was stolen and that he was present with three other men who were arrested emerging from an alley with an enclosed cardboard box containing a typewriter. This evidence was held insufficient to support the defendant's conviction in the absence of showing that he had entered the office, that he saw or could have seen the typewriter inside or a showing of how long the office was unoccupied. The evidence is much stronger in the case at bar. The defendant was shown to be in the jewelry store at the time the ring was stolen, he handled at least one of the rings and was in a position to have committed the theft and the ring was found in his automobile about ten days later. The Favell case is not persuasive on the facts of this case.

The remaining contentions are so intermingled and uncertainly stated that it is difficult to understand precisely what reasons are being urged. For instance, one of the statements is that possession of recently stolen property "is not sufficient evidence of ownership to overcome the presumption of innocence to warrant a conviction." The "ownership" is not related to any particular thing, nor is there any specification of the particulars in which the proof of ownership is deficient. Appellate courts are not required to speculate concerning what particular error is sought to be charged. State v. Peterson, Mo., 154 S.W.2d 134, 138[5]. Ownership of the stolen ring was adequately proved. It is further stated that it must be shown that the "identical property" was found in the defendant's possession. The proof on this score was also quite adequate.

Further assertions are that the stolen property must be shown to have been "found in the EXCLUSIVE possession" of the defendant, that the evidence "does not warrant any inference that he was the thief UNLESS such possession was RECENT and EXCLUSIVE" and that possession of recently stolen property "raises no presumption of guilt as to theft" and does not warrant a conviction. Cited in support of these assertions are State v. Lackland, 136 Mo. 26, 37 S.W. 812, State v. Durham, Mo., 367 S.W.2d 619, State v. Fogle, 211 Mo.App. 18, 244 S.W. 105, State v. James, 133 Mo.App. 300, 113 S.W. 232, State v. Deckard, Mo., 37 S.W.2d 414, State v. Duncan, 330 Mo. 656, 50 S.W.2d 1021, and State v. Matticker, Mo., 22 S.W. 2d 647. Examination of these cases demonstrates that they are not controlling on the facts proved in this case.

■■ The unexplained possession of recently stolen property is a sufficient cir-

cumstance to sustain a conviction of stealing the property. State v. McClanahan, Mo., 419 S.W.2d 20, 21[1]; State v. Jones, Mo., 358 S.W.2d 782, 784[2]. The defendant infers, however, that the *possession* was not *recent*. The ring was stolen December 27, 1963, and was recovered on January 10, 1964, which was fourteen days later. The loss was discovered and reported immediately. A warrant for the defendant's arrest was issued and a pickup order sent to St. Louis. Clearly, the ring found in the defendant's automobile is in the category of recently stolen property. When possession of recently stolen property is proved and not explained, an inference may be drawn that the possessor is the thief even though his presence at the scene of the crime is not shown. Complete reliance on the inference is not necessary in the instant case because there is direct evidence that the defendant was present when the ring was stolen and was in a position to have committed the theft.

In written argument the defendant states that there can be no inference that the ring was in his possession because he was not an occupant of the car from the time of his arrest to the time of the search and seizure. The evidence is that this interval was from 10 to 15 minutes. During part of this time the defendant's automobile was being driven to the police station with the patrol car following. The complaint is without merit. In State v. Meeks, 327 Mo. 1209, 39 S.W.2d 765, 768[2], it was held in a burglary prosecution that admitting a constable's testimony that he found packages in the defendant's automobile after it had been parked near the jail for two days and one night was not error.

■ Finally, the defendant asserts that the stolen ring, exhibit 2, was not shown to have been in the defendant's possession, exclusive or otherwise. To create an inference of guilt, the term "exclusive" does not mean that the possession must be separate from all others provided there is other evidence to connect the defendant with the offense. State v. Jordan, Mo., 235 S.W.

2d 379, 383[10]. In the recent case of State v. Webb, Mo., 432 S.W.2d 218, 222 [6], this court held that "the possession of recently stolen goods which will support an inference of guilt may be a joint possession of a defendant and another, and that such possession need not be separated from all possession by others." In State v. Webb, Mo., 382 S.W.2d 601, 604[2–6], possession was held to be sufficiently proved where stolen goods were found in a closet and under a bed in the defendant's residence although the house was also occupied by the defendant's brother and his sister-in-law. The situation in this case is quite unlike State v. Watson, Mo., 350 S.W.2d 763, 767[2], where the defendant's only proved connection with the offense was his riding as a passenger in an automobile owned and operated by another which was carrying the stolen goods. The fact that the stolen ring was found in the defendant's automobile near where he was seated considered in connection with his presence in the jewelry store when the ring was stolen and his conduct at that time justifies an inference that the ring was in his possession at the time the police officers stopped his car.

■ The presence of the accused at the place of the commission of a criminal offense may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor in the crime. State v. Ramsey, Mo., 368 S.W.2d 413, 418[9]; State v. Castaldi, Mo., 386 S.W.2d 392, 395[2]. Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. State v. Butler, Mo., 310 S.W.2d 952, 957 [7]; State v. Ramsey, Mo., 368 S.W.2d 413, 418[9]. From the defendant's presence and conduct in the jewelry store, an inference may reasonably be drawn that he was an active participant in the theft of the ring. He asked to be shown men's rings and did most, if not all, of the talking. He is the only one that was seen to handle

any of the rings. He took a ring from a box and put it back in the tray. When he and his companions left, a "phony ring" was found in the box. His automobile was used to transport them to Fulton. This evidence is further buttressed by the fact that the stolen ring was found in his automobile after he was arrested for stealing it.

The supreme court on review must indulge in a presumption of right rather than wrong action by the trial court, and the burden of demonstrating error and prejudice by reason of the denial of a motion for a directed verdict rests upon the convicted defendant. State v. Latham, 344 Mo. 74, 124 S.W.2d 1089, 1090[4]; State v. Glenn, Mo., 262 S.W. 1030, 1032[2]; Pritchard v. United States, 386 F.2d 760, 763[2]; Neubauer v. United States, 250 F.2d 838, 839[1], cert. den. 356 U.S. 927, 78 S.Ct. 715, 2 L.Ed.2d 758. A mere possibility of innocence is not sufficient to justify a holding that the evidence is insufficient to support a verdict of guilty. State v. Spraggins, Mo., 368 S.W.2d 407, 411[7].

State v. Tettamble, Mo., 431 S.W.2d 441, involved the use of circumstantial evidence in a murder case. This court stated that the jury may consider all of the evidence in determining guilt and that the defendant was not entitled to an instruction that the jury should acquit if it had a reasonable doubt as to the evidence of a singled-out fact. The court further held: "The measure of reasonable doubt need not be applied to the specific detailed facts, but only to the whole issue." 431 S.W.2d 441, 443[4–7]. The evidence in the instant case must be considered in its entirety; its probative value is strengthened by the relation of the parts to each other. When so considered, the evidence amply supports the verdict of guilty.

The judgment is affirmed.

HENLEY, FINCH, DONNELLY and MORGAN, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

HOLMAN, C. J., dissents.

SEILER, Judge (dissenting).

I respectfully dissent.

We have a long-established rule in circumstantial evidence cases in criminal law that "the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence." [1] Other cases put the rule in terms that the "[circumstances] must be irreconcilable with the innocence of the accused." [2]

Measured by this yardstick, the circumstances of defendant's presence and action in the jewelry store, while suspicious and such as to have afforded him an opportunity to take the rings, fall short of being inconsistent and irreconcilable with his innocence and of excluding every reasonable hypothesis of innocence. The record is clear Mr. West, the proprietor, did not actually see any of the three persons in his store take the rings, although he saw defendant pick up one ring, look at it, and put that ring back in the tray. The rings were on top of the showcase. All three persons were looking at the rings and were close enough to have reached them. The defendant was the only one Mr. West saw handle the rings, but

---

1. For recent declarations to this effect in Divisions One and Two of this court see State v. Sallee, Mo., 436 S.W.2d 246 and State v. Aguilar, Mo., 429 S.W.2d 754. The rule goes back almost 100 years, State v. Hill, 65 Mo. 84.

2. See, State v. Wilson, 345 Mo. 862, 136 S.W.2d 993, 997; State v. Freyer, 330 Mo. 62, 48 S.W.2d 894, 899; State v. Pritchett, 327 Mo. 1143, 39 S.W.2d 794, 797.

he testified the others were also standing around the counter and could have handled the rings. Mr. West did not notice what the other two persons were doing all the time and on two occasions Mr. West left the rings. Once was when he went to the front window to get a ring pointed out by the defendant. The other time was when he got the unset diamonds from a table near the watch counter and showed them to defendant under a light. Mr. West did not put the rings away and he did not notice what defendant's two companions were doing during this time. Altogether the three persons were in the jewelry store around 10 minutes. One of them brought the matter to an end by saying, "Let's go" and they thereupon departed, but there is no evidence this cue, if it was a cue, was given by defendant.[3]

The circumstances before us do not exclude every reasonable hypothesis of innocent intent on the part of defendant (such as looking at the rings and stones with a view toward buying) and they do not exclude every reasonable hypothesis that one or both of defendant's companions may have taken the rings without defendant's knowledge or contrivance. There was no evidence that there was any past relationship of defendant with the other two. The best the state can make out of these circumstances is that the defendant was present in the store when the ring was stolen and was in a position to have committed the theft. This is not sufficient to put him in the penitentiary for two years.

The state and the majority opinion then rely upon the rule that the unexplained possession of recently stolen property is sufficient to sustain a conviction of stealing the

property. The trouble with this, however, is the state failed to prove that defendant, " * * * with conscious knowledge of the fact that the property was stolen, exercised dominion and control over it * * *", State v. Webb (Mo.Sup.). 382 S.W.2d 601, 604.

To illustrate: when defendant was arrested on Olive Street in St. Louis, no search was made at that time of his automobile. The officers did not see the ring at that time. There is no evidence as to where the ring was or who had possession of it at that particular moment. Defendant was told to get out of the car, which he did, and he was then searched on the street for weapons. Defendant did not again enter his car. He had no further access to it and at all times after being ordered from his car, defendant was in the custody of the two police officers. They took him with them in the police car.

No search was made at the time of the arrest of the two women who were in defendant's car, one of whom was sitting in the back seat next to defendant. The driver was searched, but only for weapons and was then permitted to get back in the car. The police did not keep the car or its occupants under close observation. They left the car on the police lot, alone with its three occupants, and it was not until some 10 or 15 minutes after the arrest that Officer Weber searched the car. Then it was that he found the ring on the floor, "approximately where" defendant had been sitting some 10 or 15 minutes earlier. Here, as in the recent case of State v. Schleicher, Mo., Division One, 438 S.W.2d 258 which involved a question of what was sufficient to show possession in defendant of recently stolen property, there is in this record no

3. As an example of affirmative participation by defendant in the theft, the majority opinion states defendant's automobile "was used to transport them [defendant's companions] to Fulton." However, while there was direct evidence defendant's car was parked near the store, there is no direct evidence in the record one way or the other as to how defendant's companions got to Fulton. No doubt the majority opinion means

the inference is that defendant used his car to bring them to Fulton.
Such an inference is possible, of course, but the conclusion sought that defendant actually did so is by no means thereby established. There are many ways defendant's companions could have been in Fulton without his transporting them there and there are many innocent reasons why a person might have his automobile in Fulton.

evidence that defendant at any time had dominion and control over the ring.

No one saw defendant in possession of the ring. Again the state is relying on circumstantial evidence to establish defendant's possession. But the circumstances are as consistent with some one or all or combination of the other three in the car having put the ring where it was found as with defendant's having done so. The floor of the car was as open and available to them as it was to defendant, more so in fact during the 10 or 15 minutes when defendant was not in the car at all. There is nothing in the record to show that defendant is legally chargeable with their acts, or that he had any knowledge of what they did after he left the car. "It would be pushing the rule too far to require of one accused of a crime an explanation of his possession of the stolen property, when such possession could also, with equal right, be attributed to another", State v. Warford, 106 Mo. 55, 16 S.W. 886, 888. The circumstances are as consistent with one of the three putting the ring on the floor of the car after defendant left the car as with defendant's having put it there. As stated in State v. Fogle, 211 Mo.App. 18, 244 S.W. 105, 106–107, a circumstantial evidence case involving alleged theft of a tire which was later found on defendant's car (a situation quite similar to what we have here where a stolen ring is later found in defendant's car), " * * * in short, the possession must be such as to exclude the idea that some other person may have left the casing where it was found. * * *" There was no showing of possession in defendant in the case at bar such as to exclude the idea that one or more of the three who were left in charge of the automobile put the ring where it was found.

The mere fact the automobile was owned by defendant is not sufficient in these circumstances to charge him with having had the exercise of dominion and control over the ring. When defendant left the car at the order of the police there was at that moment nothing to show who had possession of the ring. When the ring was found some 10 or 15 minutes later, the automobile was not then in fact in his possession but was, instead, in the exclusive possession of his three companions, for whose actions, as earlier mentioned, defendant was not shown to be responsible. The ring was found in an open area on the rear floor, a location which was within easy reach of any of the three occupants at any time. How or when the ring got there is not shown. Significantly, the ring was not found in some cache or locked compartment in the car which would likely be known or accessible to the car owner alone. In my opinion, under these facts, defendant cannot be said to have been in possession of the ring within the rule relied upon by the state.

State v. Meeks, 327 Mo. 1209, 39 S.W.2d 765, 768, cited by the majority opinion for the proposition there is no merit in defendant's point that the ring was not found in his car until some 10 or 15 minutes after the car had been in the exclusive possession of others than defendant, is clearly distinguishable, I respectfully submit. In the Meeks case, the automobile in which the stolen cigarettes were later found *was in the exclusive possession of the police at all times after the defandants were arrested.* Therefore, no one else but defendants could have put the cigarettes where they were found. The court so states at 39 S.W.2d l.c. 768: " * * * There was no evidence tending to show in the slightest degree that any one had concealed the cigarettes in the car after the defendants had lost exclusive possession of it. * * *" The facts are much different in the present case. Also, another distinction is that the cigarettes in the Meeks case were found stashed away in what the opinion described as "places of seeming concealment", which is not the case here as to the ring.

In State v. Webb (Mo.Sup.) 382 S.W.2d 601, 604, cited by the majority opinion for the proposition that a joint possession is sufficient, the facts were that defendant was present in his house at the time the stolen property was found therein, some of the loot

being under the bed in which he was sleeping. In our case the defendant was not present in the car when the ring was found, but others were who had free, independent access to where the ring was found. In the other State v. Webb case cited in the majority opinion on the proposition that joint possession is sufficient, (Mo.Sup.) 432 S.W. 2d 218, the facts as to possession are not at all similar. Webb admittedly had joint possession of the stolen hogs—he claimed he was hauling them for someone else and that his possession was not exclusive and unexplained. State v. Jordan (Mo.Sup.) 235 S. W.2d 379, a shop lifting case involving three women jointly charged, cited in the majority opinion, is also a case which starts with a joint possession.

In the two Webb cases and the Jordan case, step one—possession—was established, and, then, step two, it was held possession need not be exclusive. Here, however, the issue is whether there is sufficient circumstantial evidence to show step one—the required possession in defendant. This issue cannot be resolved by simply applying step two—that possession need not be exclusive. Under the approach thus used, step one—did the defendant have possession?—on which step two depends, remains unestablished.

There is a long line of Missouri cases holding that mere suspicion of guilt, however strong, is not sufficient to authorize a criminal conviction. In affirming this conviction we, in effect, violate our rules as to circumstantial evidence, presumption of innocence, and what it takes in the way of possession of stolen property to permit an inference of guilt of theft.

There is a sound reason for the circumstantial evidence rule which has been in force in Missouri for so long in criminal cases. It is based on the idea that in a circumstantial evidence case in a criminal proceeding the jury not only has to weigh the evidence by which the circumstances are established, but it must draw just conclusions from them. It is easy to take a one-sided view of circumstances when under the influence of a few powerful impressions. But

one of our highest principles is that every person is presumed to be innocent of the crime charged until proved guilty beyond a reasonable doubt. Frequently a case which rests entirely on circumstantial evidence as does this one (no one saw defendant steal the ring and no one saw it in his possession) will admit of several counter or rival hypotheses. In such a situation, all the conclusions must be satisfactorily disposed of and excluded before the presumption of innocence can with safety be abandoned. In the case before us the hypothesis that someone other than defendant stole the ring equally well accounts for the facts proved in this case. In actuality, there is no dispute about the circumstances in this case—but the conclusion that there is no reasonable hypothesis of defendant's innocence does not necessarily follow. The circumstances do not exclude the hypothesis that someone other than defendant and for whose acts he was not shown to be responsible took the ring at the store in Fulton and left it in his car without his knowledge. The circumstances are equivocal and we should not permit a defendant to be put in jail on equivocal circumstantial evidence. Where a conviction rests on circumstantial evidence, as is the case here, we have required the circumstances to be irreconcilable with innocence and to point to guilt so clearly as to exclude every reasonable hypothesis of innocence.

Nor is this rule changed by the fact that the jury has returned a verdict of guilty and we, therefore, accept as true all evidence tending to prove guilt, etc., or by the other general rules cited in the majority opinion as to appellate review. This court has many times reversed a conviction resting entirely on circumstantial evidence. *Even after verdict* the test still is that " * * * 'the circumstances, to warrant a conviction, must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of the defendant's guilt, but must be inconsistent with every other reasonable hypothesis, including the hypothesis of his innocence' * * *" The Missouri courts have not affirmed such convic-

tions where the facts and circumstances shown by the evidence are not inconsistent with the innocence of the defendant. As illustrative of many such cases, see State v. Pritchett, supra, 39 S.W.2d l.c. 796–797, from which the above quotation is taken, State v. Murphy, banc, 356 Mo. 110, 201 S. W.2d 280, and State v. Watson (Mo.Sup.) 350 S.W.2d 763, one of the cases relied on in the majority opinion.

I would have no objection to remanding this case rather than reversing it outright, so as to give the state opportunity to present additional evidence. The state unquestionably knows the identity of the three persons who were in the automobile with the defendant in St. Louis when he was arrested. If the state had investigated what these persons knew about the ring being on the floor of the car and had used them as witnesses, I doubt very much if we would have our present problem, although in voicing this observation I realize I am speaking from the advantage of hindsight. The chances are the state could also find out the identity of the two persons who were with defendant in the store in Fulton. These witnesses should be able to plug the gaps which exist in the state's case against the defendant, if the defendant is the thief. But if the state is not able to present evidence beyond what is in the present record, the information should be dismissed and defendant discharged.